## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUMBO MOVING & STORAGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> PIECE OF CAKE MOVING & STORAGE LLC, SIMPLY MOVING LLC, SIMPLY MOVING & STORAGE LLC, VOJIN POPOVIC, STEFAN MARCALI and VOLODYMYR PLOKHYKH, <br><br> Defendants. | Case No. 22-CV-05138 <br><br> **COMPLAINT** <br><br> [Demand for a Jury Trial] |

Plaintiff Dumbo Moving & Storage Inc., by and through its undersigned counsel, for its Complaint against Defendants Piece of Cake Moving & Storage LLC, Simply Moving LLC, Simply Moving & Storage LLC, Vojin Popovic, Stefan Marcali and Volodymyr Plokhykh alleges:

### NATURE OF THE ACTION

1. This action arises out of various acts of malfeasance committed by the Defendants that amount to the misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), misappropriation of trade secrets under New York Common law, the Computer Fraud and Abuse Act of 1986 ("CFAA"), breach of fiduciary duty, breach of the duty of loyalty, aiding and abetting in the breach of fiduciary duty and duty of loyalty, tortious interference with prospective business advantages, unfair competition, unjust enrichment and accounting. Plaintiff seeks to hold Defendants liable for compensatory and punitive damages and to secure a permanent injunction prohibiting Defendants from continuing to engage in the unlawful conduct alleged herein.

quotes for services, scheduling for jobs and tracking job performance.   An automated central management system significantly reduces the amount of human involvement required to service customers, thereby increasing profitability, and reducing the cost of providing services to customers.

14.     Dumbo could not find any "off the shelf" software that could fulfill its needs since nothing like the system envisioned by Dumbo existed for the moving or logistics industries at the time.

15.     In 2016, Lior Rachmany ("Rachmany"), who is the sole owner and shareholder of Dumbo discussed his concept for an automatic central management system with Plokhykh, who was, at that time, a full-time employee for Dumbo.

16.     Plokhykh believed Rachmany had a good idea and introduced Rachmany to IT Dev Group, Inc., which is a company that develops custom software in collaboration with companies in various industries on a "work for hire" basis.

17.     Although IT Dev Group, Inc. is a domestic corporation organized under the laws of the state of New York, its entire business operation, including most of its employees, are based in Ukraine.

18.     At the time Plokhykh introduced Dumbo to It Dev Group, Inc., Plokhykh failed to disclose to Dumbo that he was an employee and/or stakeholder in IT Dev Group, Inc.

19.     After speaking with the staff of IT Dev Group, Inc., Dumbo retained the company to collaborate on the development of an exclusive and proprietary software system (the "Exclusive Software") for Dumbo's proprietary and exclusive benefit.

20.     The Exclusive Software includes numerous novel features that have never been used by the moving industry, including paperless tracking, communication, sales, data, marketing, and analytical capabilities, all of which were designed at Dumbo's request and consistent with he specifications provided by Dumbo.

e. An easy and seamless online payment system that enables customers to make payments online, with Dumbo employees receiving real time notice of the clearance of customer payments.

25. After considerable time, effort and money was spent to develop the Exclusive Software, the software worked exactly as intended. In fact, Dumbo invested well over $100,000.00 to develop the Exclusive Software over a two (2) year period. The Exclusive Software made Dumbo's operation far more efficient and profitable than it had been before its implementation.

**C. DUMBO'S INVESTMENT IN THE EXCLUSIVE SOFTWARE PROVED TO BE AN OUTSTANDING SUCCESS, SETTING A NEW STANDARD FOR THE MOVING INDUSTRY**

26. Dumbo's investment in developing the Exclusive Software proved to be an outstanding investment.

27. In 2020, Dumbo generated more than $36,000,000.00 in revenue, which is more than double the $17,500,000 in revenue that Dumbo generated in 2017 (which was the last year before Dumbo launched the exclusive software). Dumbo's increase in revenue is largely attributable to the launch of the Exclusive Software in 2018.

**D. PLOKHYKH, ACTING IN CONCERT WITH POC, SIMPLY, POPOVIC AND MARCALI, MISAPPROPRIATED DUMBO'S TRADE SECRETS AND PROPRIETARY INFORMATION, INCLUDING THE EXCLUSIVE SOFTWARE**

28. The success of Dumbo's Exclusive Software did not go without notice by its competitors, none of whom had the ability to provide competitive services.

29. Plokhykh was employed by Dumbo from 2015 through until August 2020. Dumbo believed Plokhykh was a valued and trusted employee and, in fact, promoted him to the position of store manager in 2017.

30. Upon information and belief, as a store manager, Plokhykh saw how successful the Exclusive Software was for Dumbo and knew it would be a coveted and valuable asset that could be marketed and sold to Dumbo's competitors.

37.     As a direct and proximate result of the Defendants' actions, POC, Popovic, Simply and Marcali used their unauthorized access to Dumbo's Exclusive Software to gain an immediate competitive advantage over Dumbo without having to invest the time and money required to develop their own competing software.

## E.   PLOKHYKH'S MISAPPROPRIATION OF THE EXCLUSIVE SOFTWARE WAS DISCOVERED BY DUMBO IN AUGUST 2020

38.     In or around July or August 2020, Dumbo first learned that POC and Simply were using what appeared to be unauthorized copies of the Exclusive Software.  This fact was discovered when Dumbo received emails from potential customers informing Dumbo that they had received instant quotes from POC and Simply that looked strikingly similar to the form of quote used by Dumbo, but the quoted price was at a substantial discount to the Guaranteed Price provided by Dumbo's algorithm.

39.     After conducting an investigation, Dumbo determined that it was highly likely that POC and Simply were using Dumbo's Exclusive Software, including its proprietary source code.

40.     Dumbo informed IT Dev Group, Inc. of the situation and it began an investigation to discover how POC and Simply were able to gain access to Dumbo's source code and Exclusive Software.

41.     The fact that POC and Simply were able to gain unauthorized access to the Exclusive Software was surprising because Dumbo had gone to great lengths to secure and protect the Exclusive Software and its source code, including the following measures;

   a.   although IT Dev Group, Inc. assisted Dumbo with the technical aspects of developing the source code for the Exclusive Software, Dumbo is the exclusive owner of all right and interests in the Exclusive Software;

   b.   Dumbo did not provide any person or entity with a license or permission to disseminate the Exclusive Software at any time;

   c.   Dumbo did not share the Exclusive Software with any third parties;

8

48.     Upon information and belief, in August 2020, IT Dev Group, Inc. also terminated its relationship with Plokhykh.

## F.     IN 2018, PLOKHYKH STARTS A NEW BUSINESS SELLING DUMBO'S EXCLUSIVE SOFTWARE TO ITS COMPETITORS

49.     Upon information and belief, in or around June 2018, Plokhykh sold unauthorized copies of the Exclusive Software and source code to POC, Simply, Popovic and Marcali.

50.     In or around June 2018, Plokhykh also created a website for the sole purpose of marketing the Exclusive Software to Dumbo's competitors and other moving companies throughout the country.

51.     Upon information and belief, on or about June 19, 2018, Plokhykh launched a website using the uniform source locator (URL) https://qqmoving.com which purports to be a website for an entity referred to as QQ Moving Companies or Quick Quote Moving.

52.     Based on a search of social media sources, Plokhykh purports to be the Chief Executive Officer of Quick Quote Moving a/k/a/ QQ Moving. (*See* https://qualified.one/us/companies/it-dev-group/reviews/43491/).

53.     Although QQ Moving appears to be a website for a moving company or moving referral service constructed using the Exclusive Software that Plokhykh misappropriated from Dumbo, it does not actually provide any moving or moving referral services.     Instead, www.qqmoving.com is a demonstrator site used by Plokhykh to market and sell the Exclusive Software to Dumbo's competitors and other moving companies nationwide.

54.     While Plokhykh was actively marketing and selling Dumbo's Exclusive Software that he stole beginning in 2018 without Dumbo's knowledge, he continued to work as a store manager for Dumbo until August 2020.

55.     As of June 2022, Plokhykh continues to market and sell unauthorized copies of Dumbo's Exclusive Software to Dumbo's competitors.

56.    As of June 2022, POC, Popovic, Simply and Marcali are continuing to benefit from the use of Dumbo's Exclusive Software.

## AS AND FOR THE FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets Under the Defense of Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.)—Against All Defendants)

57.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

58.    Dumbo owns and possesses confidential and proprietary trade secrets in the form of the Exclusive Software.

59.    Dumbo took great efforts to secure control over and access to the Exclusive Software.

60.    In particular, the Exclusive Software was stored on a proprietary, secure server and that was maintained by IT Dev Group, Inc.

61.    At all relevant times, IT Dev Group, Inc. agreed that Dumbo owns all rights and interests in the Exclusive Software.

62.    Although Plokhykh was employed by Dumbo as a store manager, Dumbo did not knowingly give him or any other Dumbo employee access to the Exclusive Software.

63.    Plokhykh gained unauthorized access to the Exclusive Software through his business relationship with IT Dev Group, Inc.

64.    In or around June 2018, Plokhykh sold unauthorized copies of the Exclusive Software to POC, Simply, Popovic and Marcali.

65.    In or around June 2018, Plokhykh created a website using the name Quick Quote Moving or QQ Moving (www.qqmoving.com) for the sole purpose of demonstrating and marketing Dumbo's Exclusive Software for sale to third parties—all of whom are Dumbo's competitors.

66.    Plokhykh ultimately licensed or sold copies of Dumbo's Exclusive Software to Dumbo's competitors including, POC and Simply, while he was still employed by Dumbo.

67.     Prior to forming POC, Popovic had been employed by or otherwise engaged by Dumbo as independent contractor between 2013 and 2018.

68.     During the time that Popovic was doing business with Dumbo, Popovic developed either a friendship and/or close business relationship with Plokhykh.

69.     Upon information and belief, upon leaving Dumbo on or about 2018, Defendant Popovic started POC, which was Popovic's own moving and storage company.

70.     POC and Popovic were aware of the features and benefits provided by the Exclusive Software.

71.     Upon information and belief, POC and Popovic believed the Exclusive Software would be of great commercial benefit to POC and would give POC a competitive advantage over Dumbo and other moving companies.

72.     POC and Popovic were also aware the Exclusive Software was solely and exclusively owned by Dumbo.

73.     Upon information and belief, in or about 2018, Plokhykh, either individually or through an entity he owns or controls, sold unauthorize copies of the Exclusive Software and source code to POC and/or Popovic without Dumbo's knowledge or consent.

74.     Popovic and/or POC agreed to acquire the Exclusive Software and source code from Plokhykh, knowing that Plokhykh was an employee of Dumbo and that he was not authorized to sell, transfer, or license a copy of the Exclusive Software to Popovic or POC.

75.     After illegally acquiring the Exclusive Software, Popovic and/or POC incorporated all the unique features of the Exclusive Software into POC's website and business operations.  As a result of its use of the Exclusive Software, POC's business grew exponentially at Dumbo's expense and to Dumbo's detriment.

85.     By reason of their wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Defendants from using the Exclusive Software they misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

### AS AND FOR THE SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets under New York Common Law— Against All Defendants)

86.     Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

87.     Dumbo owns and possesses confidential and proprietary information, including the Exclusive Software.

88.     As an employee of Dumbo, Plokhykh owed a duty to Dumbo to maintain and protect the confidentiality of any information received from, on behalf of or created or the exclusive benefit of Dumbo, including the Exclusive Software.

89.     Plokhykh had no right or authority to use or disclose such confidential information, including the Exclusive Software, for the benefit of any party other than Dumbo, including POC, Popovic, Simply and Marcali.

90.     Plokhykh misappropriated Dumbo's trade secrets and proprietary information, including the Exclusive Software, by making an unauthorized complete copy of the Exclusive Software and source code from the secure server maintained by IT Dev Group, Inc. for Dumbo's benefit.

91.     Plokhykh used the unauthorized copy of the Exclusive Software to create a new business, whereby he actively solicited Dumbo's competitors and offered to sell or license

14

unauthorized copies of the Exclusive Software to Dumbo's competitors without Dumbo's knowledge or consent.

92.     Plokhykh sold or licensed unauthorized and/or illegal copies of the Exclusive Software to POC and/or Popovic without Dumbo's knowledge and consent.

93.     Plokhykh sold or licensed unauthorized and/or illegal copies of the Exclusive Software to Simply and/or Marcali without Dumbo's knowledge and consent.

94.     Upon information and belief, Plokhykh sold or licensed unauthorized and/or illegal copies of the Exclusive Software and source code to other moving and logistics companies, including Dumbo's competitors, without Dumbo's knowledge or consent.

95.     Dumbo is suffering and will continue to suffer irreparable harm because of Plokhykh, POC, Popovic, Simply and Marcali's actions.

96.     Dumbo has no adequate remedy at law.

97.     By reason of their wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Defendants from using the Exclusive Software they misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE THIRD CAUSE OF ACTION

### (Computer Fraud and Abuse Act of 1986 (18 U.S.C. § 1830)—Against Plokhykh)

98.     Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

99.    Plokhykh had authorization to access Dumbo's computers for the purpose of conducting his day-to-day business activities, none of which required Plokhykh to access the Exclusive Software maintained on servers for Dumbo's exclusive use and benefit.

100.    Plokhykh did not have authority to make a copy of the Exclusive Software that is owned by Dumbo.

101.    Without Dumbo's authorization, Plokhykh used his limited access to IT Dev Group, Inc. servers to make unauthorized copies of Dumbo's trade secrets and proprietary information, including copies of the Exclusive Software and the source code used to compile the Exclusive Software.

102.    Plokhykh attempted to conceal his unauthorized access of the servers used to store the Exclusive Software by deleting information that would indicate that he had unauthorized access to the Dumbo's files, including its Exclusive Software and source code.

103.    As a result of Plokhykh's efforts to conceal his unauthorized access of Dumbo's servers, Dumbo did not discover that Plokhykh had made unauthorized copies of Dumbo's trade secrets and proprietary information until August 2020.

104.    In August 2020, Dumbo informed IT Dev Group, Inc. that there was a data breach on the server and that Plokhykh had made unauthorized copies of the Exclusive Software that he was marketing and selling to Dumbo's competitors, while he was still employed by Dumbo.

105.    Upon information and belief, IT Dev Group, Inc. performed an investigation into Dumbo's allegations in August 2020 and confirmed they were true and accurate.

106.    As a result of these findings, Dumbo terminated Plokhykh employment in or around August 2020.

107.    Upon information and belief, IT Dev Group, Inc. also terminated its relationship with Plokhykh in or around August 2020.

108.    Dumbo has suffered losses because of Plokhykh's actions, including the cost of responding to the offense, conducting a damage assessment, determining the extent of the data breach, loss of revenue and other consequential damages.

109.    By reason of Plokhykh's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent Plokhykh from using the Exclusive Software he misappropriated from Dumbo to benefit himself and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty—Against Plokhykh)

110.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

111.    By virtue of his employment with Dumbo, Plokhykh owed Dumbo a fiduciary duty to protect its trade secrets and proprietary information.

112.    Plokhykh breached his fiduciary duty to Dumbo by copying Dumbo's trade secrets and proprietary information, including the Exclusive Software while he was employed by Dumbo and without Dumbo's knowledge and consent.

113.    Plokhykh used Dumbo's proprietary information, including the Exclusive Software to solicit Dumbo's competitors while he was still employed by Dumbo for his own personal benefit and in a concerted effort to provide Dumbo's competitors with an unfair business advantage over Dumbo.

114.    While Plokhykh was still employed by Dumbo, he created a new business venture in June 2018 called Quick Quotes Moving a/k/a QQ Moving (www.qqmoving.com) to demonstrate the

functionality of the stolen Exclusive Software to Dumbo's competitors and market the Exclusive Software to those competitors.

115.   While Plokhykh was still employed by Dumbo he did, in fact, sell or license unauthorized copies to POC, Popovic, Simply, Marcali and other competitors of Dumbo without Dumbo's knowledge or consent.

116.   Plokhykh continues to market and sell unauthorized copies of Dumbo's Exclusive Software to Dumbo's competitors.

117.   As a direct and proximate result of Plokhykh breach of his fiduciary duty to Dumbo, Dumbo has been irreparably harmed.

118.   Based on the forgoing, Dumbo is entitled to a preliminary and permanent injunction to prevent Plokhykh from causing Dumbo further harm including requiring Plokhykh to turn over to Dumbo all of Dumbo's proprietary and confidential information in his possession, including the Exclusive Software, and destroy all copies of same.

119.   By reason of Plokhykh's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent Plokhykh from using the Exclusive Software he misappropriated from Dumbo to benefit himself and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE FIFTH CAUSE OF ACTION

### (Breach of the Duty of Loyalty against Plokhykh)

120.   Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

121.    By virtue of his position as a trusted employee, Plokhykh owed Dumbo a duty of loyalty.

122.    Dumbo trusted Plokhykh with confidential and proprietary information, including access to its computer system for the sole purpose of enabling Plokhykh to perform his job responsibilities as a store manager for Dumbo.

123.    Dumbo did not, however, authorize Plokhykh to access to the Exclusive Software or make a copy of the Exclusive Software for any reason.

124.    Plokhykh owed Dumbo a duty not to exploit his access to Dumbo's confidential and proprietary information to advance his own interests and those of others, including POC, Popovic, Simply and Marcali.

125.    Plokhykh, while still employed by Dumbo, stole Dumbo's Exclusive Software, created a website to demonstrate its functionality and proceeded to sell or licensed unauthorized copies of the Exclusive Software to Dumbo's competitors.

126.    Plokhykh violated his duty of loyalty to Dumbo.

127.    Plokhykh actions were intentional, malicious and/or with wanton disregard for Dumbo's rights.   In fact, Plokhykh's conduct was so outrageous that it warrants the imposition of punitive damages.

128.    By reason of Plokhykh's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent Plokhykh from using the Exclusive Software he misappropriated from Dumbo to benefit himself and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE SIXTH CAUSE OF ACTION

**(Aiding and Abetting Breach of Fiduciary Duty and Duty of Loyalty—
Against POC, Popovic, Simply and Marcali)**

129.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

130.    At all relevant times, POC, Popovic, Simply and Marcali were aware that Plokhykh was employed by Dumbo.

131.    At all relevant times, POC, Popovic, Simply and Marcali were aware that Plokhykh was entrusted by Dumbo with access to Dumbo's proprietary and confidential information, including, but not limited to, the Exclusive Software, none of which was available to the public.

132.    At all relevant times, POC, Popovic, Simply and Marcali were aware that Plokhykh owed fiduciary duties and duties of loyalty to Dumbo that required him to, *inter alia*: (1) devote substantially all of his time and attention to the business of Dumbo; (ii) refrain from engaging in business or business activity that competed with Dumbo; (iii) refrain from using, divulging, publishing or otherwise revealing confidential information about Dumbo's clients during the course of Plokhykh's employment with Dumbo; and (iv) refrain from conducting activities in any manner inimical to Dumbo's best interest.

133.    POC, Popovic, Simply and Marcali knew that Plokhykh had the ability to access and copy Dumbo's Exclusive Software.

134.    Upon information and belief, POC, Popovic, Simply and Marcali encouraged Plokhykh to make an unauthorized copy of the Exclusive Software for their benefit.

135.    Plokhykh, acting on the encouragement of POC, Popovic, Simply and Marcali, made an unauthorized copy of the Exclusive Software and the source code.

136.    Plokhykh subsequently sold or licensed an unauthorized copy of the Exclusive Software and source code to POC, Popovic, Simply and Marcali and other competitors of Dumbo.

137.    POC, Popovic, Simply and Marcali acquired the Exclusive Software from Plokhykh knowing that it had been unlawfully obtained Plokhykh.

138.    As alleged herein, POC, Popovic, Simply and Marcali aided and abetted Plokhykh in committing the wrongful acts described herein, including the breach of his fiduciary duty and duty of loyalty to Dumbo.

139.    As a direct and proximate result of POC, Popovic, Simply and Marcali's wrongful and unlawful actions in aiding and abetting Plokhykh in committing unlawful actions, Dumbo has sustained and will continue to sustain further damages, including, but not limited to, damages reflecting lost business, lost profits, damages to its goodwill, as well as the compensation paid to Plokhykh during the period Plokhykh breached his obligations and duties to Dumbo, in amounts to be proven at trial, but in no case less than $20,000,000.00.

140.    Dumbo has also suffered and will continue to suffer immediate and irreparable harm and will continue to suffer each such injury until the breaches are preliminarily and permanently enjoined.

141.    The aforementioned wrongful conduct was intentional, malicious and in bad faith. POC, Popovic, Simply and Marcali's conduct will continue to subject Dumbo to cruel and unjust hardship in conscious disregard of Dumbo's rights, so as to justify an award of exemplary and punitive damages against POC, Popovic, Simply and Marcali.

142.    By reason of POC, Popovic, Simply and Marcali's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent POC, Popovic, Simply and Marcali from using the Exclusive Software that was misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000,

punitive damages in an amount to be determined at trial, attorneys' fees and costs, and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

### (Tortious Interference with Prospective Business Advantages-Against All Defendants)

143.     Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

144.     Prior to Plokhykh's unlawful misappropriation and sale of the Exclusive Software, Dumbo enjoyed an economic advantage over its competitors, including POC and Simply.

145.     In particular, Dumbo was able to provide a streamlined, automated lead generation and fulfillment process, instantaneous price quotes and scheduling.   To develop its Exclusive Software, Dumbo investment hundreds of hours of time over a two (2) year period (between 2016 and 2018) and over $100,000.00.

146.     When the Exclusive Software launched in 2018, none of Dumbo's competitors used a similar system.  As a result, Dumbo grew to become the largest regional moving company serving the tri-state area and was growing to become a national moving company.   Dumbo generated more than $18,500,000.00 million in sales growth between 2017 and 2020, far exceeding the revenues generated by POC and Simply.

147.     Dumbo had a reasonable expectation that it would continue to enjoy an economic advantage over its competitors for a reasonable period because of its investment in the Exclusive Software, while Dumbo's competitors would need to invest considerable time and money developing or legally acquiring their own software to compete with Dumbo.

148.     At the time Dumbo retained the services of IT Dev Group, Inc. to collaborate on the development of the Exclusive Software, Dumbo was not aware that Plokhykh was affiliated with that company and had access to its computer network.   Nevertheless, Plokhykh was aware of the time

22

and effort that Dumbo had invested in the Exclusive Software. As a store manager for Dumbo, Plokhykh immediately noticed the sharp increase in revenue generated using the Exclusive Software between 2018 and 2020.

149.    In or around 2018, Plokhykh accessed a secured server maintained by IT Dev Group, Inc. for Dumbo's exclusive use and benefit for the purpose of making an unauthorized copy of the Exclusive Software.

150.    Either prior to or after making the unauthorized copy of the Exclusive Software, Plokhykh informed Popovic and Marcali that he a complete copy of the Exclusive Software that he would agree to sell or license the Exclusive Software to POC, Popovic, Simply and Marcali.

151.    Popovic and Marcali agreed to purchase unauthorized copies of the Exclusive Software from Plokhykh or through an entity owned and/or controlled by Plokhykh without Dumbo's knowledge or consent.

152.    At the time Popovic and Marcali caused POC and Simply to acquire the Exclusive Software from Plokhykh, they knew the Exclusive Software was Dumbo's protected trade secret and that Plokhykh had no right to sell or license the Exclusive Software to POC or Simply.

153.    In fact, at the time Plokhykh sold unauthorized copies of the Exclusive Software to POC and Simply, he was still employed by Dumbo.

154.    By acquiring an unauthorized copy of the Exclusive Software, including the source code, POC and Simply was immediately able to offer a nearly identical user experience to user experience offered by Dumbo without investing the time and money required develop their own proprietary software to compete with Dumbo.

155.    Popovic and Marcali did, however, make a change to the instant quote algorithm to ensure that any quote offered by POC and Simply respectively would be priced lower than a quote generated by Dumbo.

156.   POC and Simply could afford to offer this additional discount because neither company, nor Popovic and Marcali as the owners and/or operators of those companies, had to invest two (2) years of time and more than $100,000.00 to develop the Exclusive Software.

157.   In short, POC, Popovic, Simply and Marcali gained an unfair economic advantage over Dumbo by illegally acquiring Dumbo's Exclusive Software without Dumbo's knowledge and consent.

158.   As a direct and proximate result of POC, Popovic, Simply and Marcali's unauthorized acquisition of the Exclusive Software, their respective business revenues increased dramatically at Dumbo's expense.

159.   The above-described unlawful conduct was done as part of a concerted and coordinated effort by POC, Popovic, Simply, Marcali and Plokhykh to misappropriate Dumbo's Exclusive Software to gain an unfair economic advantage.

160.   As a direct and proximate result of these bad acts, Dumbo has suffered and will continue to incur further damages, including by not limited to damages reflecting lost business, lost profits, damage to Dumbo's goodwill in amounts to be proven at trial, but in no case less than $20,000,000.00.

161.   Dumbo has also suffered and will continue to suffer immediate and irreparable harm unless the defendants are preliminarily and permanently enjoined from continuing to benefit from their use of Dumbo's proprietary and confidential information, including the Exclusive Software.

162.   The aforementioned wrongful conduct was oppressive, malicious and has subjected and will continue to subject Dumbo to cruel and unjust hardship in conscious disregard of Dumbo's rights, so as to justify an award of exemplary and punitive damages according to proof at trial.

163.   By reason of the Defendants' wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Defendants from using the

Exclusive Software that was misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE EIGHTH CAUSE OF ACTION

### (Fraud—Against Plokhykh)

164.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

165.    Between 2015 and 2020, Plokhykh was a full-time employee of Dumbo.

166.    As a full-time employee, Plokhykh owed Dumbo a fiduciary duty and duty of loyalty and must act with the utmost loyalty and good faith in dealings with Dumbo.

167.    In or around 2016, Plokhykh introduced Dumbo to IT Dev Group, Inc. for the purpose of enabling IT Dev Group, Inc. to solicit business from Dumbo and develop the Exclusive Software on Dumbo's behalf.

168.    At the time Plokhykh introduced Dumbo to IT Dev Group, Inc., he intentionally failed to disclose to Dumbo that he was an employee and/or stakeholder in IT Dev Group, Inc. with a financial interest in transactions between Dumbo and IT Dev Group, Inc.

169.    Upon information and belief, between 2016 and 2018, Dumbo was not aware that Plokhykh was employed by or was a stakeholder in IT Dev Group, Inc.

170.    Had Dumbo been aware of the business and financial relationship between Plokhykh and IT Dev Group, Inc. it may not have retained IT Dev Group, Inc. to develop its Exclusive Software and it would have taken additional efforts to secure and isolate the Exclusive Software and source code from Plokhykh.

171.    Upon information and belief, at all relevant times, Plokhykh had a username and password provided by IT Dev Group, Inc. that gave Plockykh access to IT Dev Group, Inc.'s computer network and servers, including the server upon which the Exclusive Software and source code was saved and secured for Dumbo's benefit.

172.    Between 2016 and 2018, Dumbo was not aware that Plockykh had the ability to access and copy its Exclusive Software and Source Code through his connection to IT Dev Group, Inc.

173.    At all relevant times, Plockykh was aware that he did not have permission or authority from Dumbo to access the Exclusive Software or source code.

174.    At all relevant times. Plockykh was aware that did not have authority or permission from Dumbo to make any copies of the Exclusive Software and source code.

175.    At all relevant times, Plockyck was aware that did not have authority or permission from Dumbo to sell unauthorized copies of the Exclusive Software and source code to Dumbo's competitors or any other party.

176.    Without Dumbo's knowledge or consent, upon information and belief, in or around June 2018, Plokhykh used the username and password provide to him by IT Dev Group, Inc. to gain unauthorized access to the server upon which the Exclusive Software and source code was stored.

177.    Without Dumbo's knowledge or consent, in or around June 2018, Plokhykh made unauthorized copies of the Exclusive Software and source code for his own pecuniary benefit and for the benefit of Dumbo's competitors, including POC, Popovic, Simply and Marcali.

178.    Upon information and belief, Plokhykh made an effort to delete data that would indicate he had accessed and copied the Exclusive Software and source code in or around June 2018 in a concerted effort to conceal his unauthorized, fraudulent and deceptive actions from Dumbo and IT Dev Group, Inc.

179.    In or around August 2020, Dumbo first discovered that Plokhykh had accessed the server upon which the Exclusive Software and source code was stored and secured.

180.    In or around August 2020, Dumbo first discovered that Plokhykh made unauthorized copies of the Exclusive Software and source code.

181.    In or around August 2020, Dumbo discovered that Plokhykh sold unauthorized copies of the Exclusive Software and code to its competitors, including POC, Simply, Popovic and Marcali.

182.    In or around August 2020, Dumbo discovered that Plokhykh was actively marketing and selling Dumbo's Exclusive Software and source code to other Dumbo competitors.

183.    As a result of Plokhykh's unlawful and fraudulent actions, Dumbo lost its right to enjoy the exclusive use of its Exclusive Software and source code.

184.    Dumbo has suffered damages as a result of Plokhykh's fraudulent actions and has been irreparably harmed.

185.    By reason of the Plokhykh's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Plokhykh from using the Exclusive Software that he acquired through his fraudulent conduct to benefit himself at Dumbo's expense. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE NINTH CAUSE OF ACTION

### (Aiding and Abetting Fraud—Against POC, Simply, Popovic and Marcali)

186.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

187.    As alleged above, Plokhykh engaged in fraudulent actions in order to gain unlawful access to the Exclusive Software and source code that he copied without Dumbo's knowledge or consent.

188.    At all relevant times, POC, Simply, Popovic and Marcali were aware that Plokhykh was employed by Dumbo and owed Dumbo a fiduciary duty and duty of loyalty.

189.    At all relevant times, POC, Simply, Popovic and Marcali were aware that Plokhykh had the ability to access and copy the Exclusive Software and source code either through his employment with Dumbo or through his position as an employee or stakeholder of IT Dev Group, Inc.

190.    At all relevant times, POC, Simply, Popovic and Marcali knew or should have known that Plokhykh did not have the authority to copy the Exclusive Software and source code that was created for Dumbo's exclusive use and enjoyment.

191.    At all relevant times, POC, Simply, Popovic and Marcali knew or should have known that Plockykh did not have the right or authority to sell, license or distribute copies of the Exclusive Software and source code that was created for Dumbo's exclusive use and enjoyment.

192.    Upon information and belief, in or around Spring 2018, Popovic and Marcali communicated with Plokhykh and expressed interest in purchasing the Exclusive Software and source code from Plokhykh for their benefit and for the benefit of POC and Simply.

193.    Upon information and belief, Popovic, Marcali, POC and Simply knew or should have known that Dumbo was unaware of Plokhykh's ability to access Exclusive Software and source code from IT Dev Group, Inc.'s servers.

194.    Upon information and belief, Popovic, Marcali, POC and Simply actually knew or were willfully blind to the fact that Plokhykh had concealed his relationship with IT Dev Group, Inc. from Dumbo and would use his ability to access IT Dev Group, Inc.'s servers to misappropriate the

Exclusive Software and source code that was saved and secured for Dumbo's exclusive use and benefit.

195.    Popovic, Marcali, POC and Simply knew or should have known that Dumbo would never authorize Plokhykh to sell, license or distribute its Exclusive Software and source code to Popovic, Marcali, POC and Simply—all of whom are Dumbo's competitors.

196.    Upon information and belief, Popovic, Marcali, POC and Simply substantially assisted Plokhykh's fraudulent acquisition of the Exclusive Software and source code by:

   a.    informing Plokhykh of their interest in acquiring Dumbo's Exclusive Software and source code from Plokhykh before Plokhykh made the unauthorized copies of the Exclusive Software and source code;

   b.    Encouraging Plokhykh to unlawfully and fraudulently acquire the Exclusive Software and source code with the promise of compensation;

   c.    Paying Plokhykh for unauthorized copies of the Exclusive Software and source code after Plokhykh successfully accessed the secure server and made unauthorized copies of the Exclusive Software and source code; and by

   d.    taking further action to conceal their own unlawful use of the Exclusive Software and source code by making minor changes to the user interface and algorithm used to calculate their equivalent of Dumbo's "Guaranteed Price".

197.    Upon information and belief, but for POC, Simply, Popovic and Marcali's willingness to pay Plockykh for unauthorized copies of the Exclusive Software and source code, it is unlikely the fraud would have occurred.

198.    By reason of POC, Popovic, Simply and Marcali's wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent POC, Popovic, Simply and Marcali from using the Exclusive Software that was fraudulently acquired from Dumbo to benefit themselves and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs, and such other and further relief as the Court believes is just and proper.

## AS AND FOR AN TENTH CAUSE OF ACTION

### (Unfair Competition (New York State Law) -Against All Defendants)

199.   Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

200.   While still employed by Dumbo, Plokhykh, unlawfully misappropriated Dumbo's labors, skills, expenditure, and good will by making an unauthorized copy of the Exclusive Software without Dumbo's knowledge or consent for the purpose of selling the Exclusive Software to Dumbo's competitors.

201.   POC, Popovic, Simply and Marcali misappropriated Dumbo's labors, skills, expenditures, and good will by knowingly acquiring unauthorized copies of the Exclusive Software from Plokhykh.

202.   Plokhykh, POC, Popovic, Simply and Marcali have misused Dumbo's Exclusive Software to solicit customers that would have otherwise used Dumbo's services without incurring the startup costs, risks and time incurred by Dumbo in developing its Exclusive Software.

203.   As a direct and proximate result of Plokhykh, POC, Popovic, Simply and Marcali's actions, POC and Simply's revenues grew substantially at Dumbo's expense resulting in direct financial loss and lost business opportunities as a result of the defendants' anticompetitive actions.

204.   By reason of the Defendants' wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Defendants from using the Exclusive Software that was misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

30

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### (Conversion—Against All Defendants)

205.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

206.    The Exclusive Software and source code is readily identifiable property, representing unique source code and a compilation of features that was custom designed and developed to Dumbo's specifications by IT Dev Group, Inc.

207.    Dumbo is the sole and exclusive owner of the Exclusive Software and source code, that invested considerable time and money developing.

208.    Dumbo had exclusive possession and control over the Exclusive Software and source code through its relationship with IT Dev Group, Inc., which maintained the Exclusive Software and source code on a secure server for Dumbo's benefit and to protect the Exclusive Software and source code from theft and tampering.

209.    Upon information and belief, Plokhykh unlawfully accessed the server intended to protect the Exclusive Software and source for the purpose of making an unauthorized copy of that property in violation of Dumbo's rights as the owner of the Exclusive Software and source code.

210.    Plokhykh used his unauthorized copy of the Exclusive Software, to create a website for the purpose of marketing and selling the Exclusive Software to Dumbo's competitors.

211.    Upon information and belief, Plokhykh sold the Exclusive Software and source code to POC, Simply, Popovic and Marcali, all of whom knew the Exclusive Software and source code was the sole and exclusive property of Dumbo.

212.    As result of Plokhykh's actions and sale of unauthorized copies of the Exclusive Software to POC, the Defendants exercised unauthorized dominion over the Exclusive Software to Dumbo's detriment and in derogation of Dumbo's ownership rights in the Exclusive Software.

31

213. The Defendants continue to exercise unauthorized dominion and control over the Exclusive Software to Dumbo's detriment and in derogation of Dumbo's ownership rights as of the filing of this Complaint.

214. By reason of the Defendants' wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent the Defendants from using the Exclusive Software that they converted from Dumbo to benefit themselves and any other third parties at Dumbo's expense. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR AN TWELFTH CAUSE OF ACTION

### (Unjust Enrichment—Against all Defendants)

215. Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

216. Defendants continue to utilize Plaintiff's proprietary and Exclusive Software that was developed for Plaintiff's exclusive use by IT Dev Group Inc. in 2016, without the Plaintiff's consent.

217. The Exclusive Software was paid for and developed by Plaintiff.

218. The Defendants procured Plaintiff's Exclusive Software through unlawful means.

219. Since on or about 2019, the Defendants have managed to grow their business by utilizing Dumbo's Exclusive Software.

220. The Defendants have enriched themselves at Dumbo's expense.

221. Defendants' continued use of Plaintiff's Exclusive Software is against equity and good conscience.

222.    By reason of the forgoing, Plaintiff is entitled to restitution, the imposition of a constructive trust against all Defendants and reasonable attorney fees and costs.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

### (Accounting—Against Plokhykh)

223.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

224.    As an employee of Dumbo, Plokhykh owed Dumbo a fiduciary duty and duty of loyalty to protect Dumbo's interests and property, including Dumbo's trade secrets.

225.    While still employed by Dumbo, Plokhykh breached his fiduciary duty and duty of loyalty to Dumbo by unlawfully copying Dumbo's Exclusive Software without Dumbo's knowledge and consent with the intent to sell the Exclusive Software to Dumbo's competitors.

226.    In addition, Plokhykh sold unauthorized copies of Dumbo's Exclusive Software to various companies and/or people, including POC, Simply, Popovic and Marcali without Dumbo's knowledge or consent.

227.    Dumbo has no adequate remedy at law.

228.    By reason of the forgoing, Dumbo is entitled to a full and complete accounting from Plokhykh for all monetary benefits he received because of his misappropriation of Dumbo's trade secrets, including the Exclusive Software.

## RESERVATION OF RIGHTS

229.    Plaintiff hereby specifically reserves the right to bring any and all other causes of action that it may maintain against any and all of the named Defendants and any other parties, including, without limitation, causes arising out of the same transaction(s) set forth herein, to the extent discovery in this action or further investigation reveals such further causes of action.[2]

---

[2] Dumbo is in the process of registering copyrights for the Exclusive Software and its source code.  Dumbo anticipates amending this Complaint to include causes of action for copyright infringement after its copyright applications are

**WHEREFORE**, Dumbo Moving and Storage Inc. prays for judgment granting the relief set forth below against Defendants Piece of Cake Moving & Storage LLC, Simply Moving LLC, Simply Moving & Storage LLC, Vojin Popovic, Stefan Marcali and Volodymyr Plokhykh:

a.   With respect to Plaintiff's First Cause of Action, as a result of the Defendant's misappropriation of trade secrets in violation of the Defense of Trade Secrets Act of 2016 (13 U.S.C. § 1836 et seq.), Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

b.   With respect to Plaintiff's Second Cause of Action, because of the Defendant's misappropriation of trade secrets in violation of New York common law, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

c.   With respect to Plaintiff's Third Cause of Action, as a result of Plokhykh's violation of the Computer Fraud and Abuse Act of 1986 as set forth in 18 U.S.C. § 1030(g), granting a judgment permanently enjoining the Plokhykh from continuing to possess, access, use, market and sell Plaintiff's trade secrets, including the Exclusive Software, and directing that Plokhykh destroy all copies of Plaintiff's trade secrets, including the Exclusive Software and source code. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

d.   With respect to Plaintiff's Fourth Cause of Action, as a result of Plokhykh's breach of fiduciary duty to Plaintiff, granting a judgment permanently enjoining the Plokhykh from continuing to possess, access, use, market and sell Plaintiff's trade secrets, including the Exclusive Software, and directing that Plokhykh destroy all copies of Plaintiff's trade Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Plokhykh from using the Exclusive Software he misappropriated from Plaintiff to benefit himself and any other third parties at Plaintiff's expense. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

---

approved and registered by the United States Copyright Office.

34

e.  With respect to Plaintiff's Fifth Cause of Action, as a result of Plokhykh's breach of his duty of loyalty to Plaintiff, granting a judgment permanently enjoining the POC, Popovic, Simply and Marcali from continuing to possess, access, use, market and sell Plaintiff's trade secrets, including the Exclusive Software, and directing that POC, Popovic, Simply and Marcali destroy all copies of Plaintiff's trade secrets, including the Exclusive Software and its source code.   Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

f.  With respect to Plaintiff's Sixth Cause of Action, as a result of POC, Popovic, Simply and Marcali's actions to knowingly and intentionally aiding and abetting Plokhykh's breach of his duty of loyalty to Plaintiff, granting a judgment permanently enjoining the POC, Popovic, Simply and Marcali from continuing to possess, access, use, market and sell Plaintiff's trade secrets, including the Exclusive Software, and directing that Plokhykh destroy all copies of Plaintiff's trade secrets, including the Exclusive Software and source code.   Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

g.  With respect to Plaintiff's Seventh Cause of Action, because of the Defendants' tortious interference with Plaintiff's prospective business advantages, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense.   Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

h.  With respect to Plaintiff's Eighth Cause of Action, because of the Plokhykh's fraud and fraudulent actions, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense.   Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

i.  With respect to Plaintiff's Ninth Cause of Action, as a result of POC, Popovic, Simply and Marcali's actions to knowingly and intentionally aiding and abetting Plokhykh's fraud, granting a judgment permanently enjoining the POC, Popovic, Simply and Marcali from continuing to possess, access, use, market and sell Plaintiff's trade secrets, including the Exclusive Software, and directing that Plokhykh destroy all copies of Plaintiff's trade secrets, including the Exclusive Software and source code. Plaintiff is also entitled to compensatory damages in an amount to be

determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

j.  With respect to Plaintiff's Tenth Cause of Action, because of the Defendants' unfair competition in violation of New York law, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

k.  With respect to Plaintiff's Eleventh Cause of Action, because of the Defendants' conversion of the Exclusive Software and source code, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent all Defendants from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense. Plaintiff is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, and punitive damages in an amount to be determined at trial;

l.  With respect to Plaintiff's Twelfth Cause of Action, because of the Defendants' unjust enrichment at Plaintiff's expense, Plaintiff is entitled to restitution from all Defendants, the imposition of a constructive trust against all Defendants and reasonable attorneys' fees and costs;

m.  With respect to Plaintiff's Thirteenth Cause of Action, Plaintiff is entitled to a full and complete accounting from Plokhykh for all monetary benefits he received because of his breach of his fiduciary duty and duty of loyalty to Plaintiff because of his misappropriation of Plaintiff's trade secrets, including the Exclusive Software and source code;

n.  With respect to all causes of action, Plaintiff is entitled to reasonable attorneys' fees and costs;

**[REST OF PAGE LEFT INTENTIONALLY BLANK]**

o.   For such other and further relief as this Court deems just and proper.

Dated: Uniondale, New York
       June 17, 2022

                                    **TURMAN LEGAL SOLUTIONS PLLC**
                                    *Counsel for Plaintiff Dumbo Moving &*
                                    *Storage Inc.*

                        By:            Stephen E. Turman
                                    626 RXR Plaza, 6th Floor
                                    Uniondale, New York 11556
                                    (516) 266-6101
                                    sturman@turmanlegal.com

                                    **OUTSIDE LEGAL COUNSEL LLP**
                                    Yogi Patel, Esq.
                                    369 Lexington Ave, 3rd Floor
                                    New York, New York 10017
                                    yp@outside-legal.com
                                    (212) 729-4266

                                    *Co-Counsel for Plaintiff Dumbo Moving &*
                                    *Storage, Inc.*