UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DUMBO MOVING & STORAGE, INC.,

                Plaintiff,

– against –

PIECE OF CAKE MOVING & STORAGE LLC, SIMPLY MOVING LLC, SIMPLY MOVING STORAGE LLC, STEFAN MARCALI, VOJIN POPOVIC, *and* VOLODYMYR PLOKHYKH,

                Defendants.

**OPINION & ORDER**

22-cv-5138 (ER)

---

RAMOS, D.J.:

    Dumbo Moving & Storage, Inc. ("Dumbo"), a moving and storage company based in Brooklyn, New York, brought this action against three other moving companies, Piece of Cake Moving & Storage LLC ("POC"), Simply Moving LLC ("Simply Moving"), and Simply Moving Storage LLC ("Simply Storage"), and several of their employees or former employees[1] (collectively, "Defendants"). In short, Dumbo alleges that the defendants improperly reproduced and misappropriated its exclusive software. Doc. 11 ¶¶ 1–60.

    Pending before the Court are the defendants' motions to dismiss the first amended complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), Docs. 40, 43, 46, and Dumbo's motion for leave to file a second amended complaint ("SAC"), Doc. 53. For the reasons set forth below, the motions to

---

[1] The individual defendants are Stefan Marcali, Vojin Popovic, and Volodymyr Plokhykh ("individual defendants"). Marcali is the owner of Simply Moving and Simply Storage. Doc. 11 ¶ 7. Popovic is the owner of POC. *Id.* ¶ 6. Plokhykh is a former employee of Dumbo. *Id.* ¶ 17.

dismiss are GRANTED in PART and DENIED in PART, and Dumbo's motion for leave to file a second amended complaint is GRANTED in PART and DENIED in PART.

I.  BACKGROUND

  A.  Factual Background

The following facts are based on the allegations in the FAC, Doc. 11, which the Court accepts as true for purposes of the instant motion.[2]  *See, e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Dumbo is a Brooklyn-based moving company that started its business in 2006.  Doc. 11 ¶ 13.  Since 2006, Dumbo grew from a small business with one moving truck to a larger moving company with over fifty-five trucks.  *Id.*  Today, it is one of the largest moving companies in the tri-state area, and it also provides long-distance moving services throughout the United States.  *Id.*

In 2016, Dumbo began developing a digital management system to coordinate customer orders and fulfillment.  *Id.* ¶ 14.  The system was designed to assign trucks and crews, track job performance with real time updates, and provide customers with instant price quotes based on a "proprietary algorithm."  *Id.*  Because Dumbo could not find existing software that it could use for these purposes, Lior Rachmany, the owner of Dumbo, pitched his idea for the system to Plokhykh, one of his then-employees.  *Id.* ¶¶ 16–17.  After hearing the idea, Plokhykh introduced

---

[2] Courts may also consider documents attached to the complaint as exhibits, as well as documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  If "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Maury v. Ventura in Manhattan, Inc.*, 544 F. Supp. 3d 396, 400 (S.D.N.Y. 2021) (citing *Poindexter v. EMI Record Group Inc.*, No. 11 Civ. 559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks omitted).  Here, the complaint relies on a number of documents that are incorporated by reference, including: (1) Dumbo's application for copyright registration filed with the United States Copyright Office, Doc. 45-1; (2) communications regarding Dumbo's application for copyright registration from 2022, Doc. 45-2; and (3) Dumbo's certificate of registration issued by the United States Copyright Office, Doc. 45-3.

Rachmany to IT Dev Group, Inc., a software development company that develops "custom software in collaboration with companies in various industries."[3]  *Id.* ¶ 18.

Rachmany ultimately retained IT Dev Group to "collaborate on the development of an exclusive and proprietary software system referred to as the 'Moving Company Automated Central Management System' . . . , for Dumbo's proprietary and exclusive benefit."[4]  *Id.* ¶ 20. The software includes numerous features that were not previously incorporated in any software designed specifically for the moving industry.  *Id.* ¶ 22.  For example, it "incorporates functions to enable Dumbo to develop and track business leads, book customer moves, schedule moves[,] assign trucks and crews [ . . . ,] and track moves in real time."[5]  *Id.*  It also allows Dumbo to "provide paperless invoices and bills of lading to customers," track business analytics, and provide customer support through instant online communications.  *Id.*  IT Dev Group and

---

[3] When Plokhykh introduced Rachmany to IT Dev Group, he failed to disclose that he also worked or held a stake in the company.  Doc. 11 ¶ 19.  According to the complaint, Plokhykh had access to IT Dev Group's network and servers "for the sole purpose of providing support and software development services" to clients other than Dumbo. *Id.* ¶ 49.

[4] In order to "secure and protect" the software and its source code, the complaint alleges that the following measures were taken:  (1) IT Dev Group and Dumbo agreed that Dumbo would have exclusive ownership of all rights and interests in the software; (2) Dumbo did not provide any person or entity with a license or permission to disseminate the software at any time; (3) Dumbo did not share the software with any third parties; (4) Dumbo did not give its employees or independent contractors access to the software or its source code; (5) the software and source code were stored on a "separate secured server maintained for Dumbo's benefit" by IT Dev Group, "which had an obligation and fiduciary duty to secure and safeguard" the software; (6) IT Dev Group was solely responsible for maintaining and updating the software.  Doc. 11 ¶ 46.  The complaint further alleges that POC, Simply Moving, Marcali, and Popovic "were [] aware the [e]xclusive [s]oftware was solely and exclusively owned by Dumbo."  *Id.* ¶¶ 104, 115.

[5] The complaint adds that the software was created using knowledge about the marketplace that Dumbo acquired through years of experience in the moving business.  Doc. 11 ¶ 23.  It allowed Dumbo to generate a "Guaranteed Price" that it would charge customers for any given job.  *Id.* ¶ 24.  "The ability to generate a 'Guaranteed Price' was intended to give Dumbo a competitive advantage in the marketplace as a customer's decision to select Dumbo over a competitor was in large part driven by the certainty of the price quote.  After the Exclusive Software launched in late 2018, the 'Guaranteed Price' became a key feature in Dumbo's marketing to customers."  *Id.* ¶ 25.

3

Dumbo agreed that the software would be owned by Dumbo.[6] *Id.* ¶ 21. Dumbo invested more than $100,000 to develop the software over a two-year period. *Id.* ¶ 28.

The software "made Dumbo's operation far more efficient and profitable than it had been before its implementation," which took place in June 2018. *Id.* ¶¶ 28, 30. In fact, Dumbo generated more than $36,000,000 in revenue in 2020, more than double the $17,500,000 in revenue that it generated in 2017, before it began using the software. *Id.* ¶ 30. Several competitors, none of whom had similar digital management systems, noticed the success that Dumbo experienced using its new software. *Id.* ¶ 31.

According to Dumbo, Plokhykh made an unauthorized copy of its software around the time that Dumbo implemented it in June 2018. *Id.* ¶ 40. Specifically, Plokhykh used his username and password for IT Dev Group to gain unauthorized access to and copy the software. Plokhykh thereafter sold a copy of the software to POC, Simply Moving, Marcali, and Popovic. *Id.* ¶¶ 40, 41, 53. In addition, while still employed by Dumbo, Plokhykh launched a "demonstrator site"[7] to market and sell the software to Dumbo's regional competitors as well as

---

[6] The copyright application states that the software was completed in 2017; however, the application was not submitted to the United States Copyright Office until July 2022. Doc. 45-1 at 3. The application lists Levgen Didenko as the author of the software, and indicates that the software was not made for hire. *Id.* In other words, Didenko, and not Dumbo, is listed as the author of the software. *See generally Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 156–57 (2d Cir. 2003) (noting that under copyright law, where a work is "made for hire," the employer is regarded as the "author of the work," as distinguished from the "creator of the work," who may be referred to as the "author in the colloquial sense") (quoting *Shapiro, Bernstein & Co. v. Bryan*, 123 F.2d 697, 699 (2d Cir. 1941) (internal quotation marks omitted). The corresponding paperwork—which was considered by the United States Copyright Office in approving the application—indicates that Didenko transferred copyright ownership in the software to Dumbo through a written agreement. Doc. 45-2 at 7. The copyright application was approved in August 2022. *Id.* at 8. As relevant here, in its opposition to the dismissal motions and in the proposed second amended complaint ("SAC"), Dumbo asserts that Didenko is the owner and principal of "IT Dev UA." Doc. 54 at 12; Doc. 53-2 ¶¶ 19–24. The SAC defines IT Dev Group as "IT Dev UA," Doc. 53-2 ¶ 19, which it distinguishes from "IT Dev NY," a corporation that was formed for the purpose of "serving as a conduit for the transfer of payments from U.S. clients to IT Dev UA," *id.* ¶¶ 25–27.

[7] The site "purports to be a website for an entity referred to as QQ Moving Companies or Quick Quote Moving," and is available at https://qqmoving.com. Doc. 11 ¶¶ 54–55. Plokhykh is the Chief Executive Officer of QQ Moving. *Id.* ¶ 55.

4

other moving companies nationwide. *Id.* ¶¶ 54–57. He actively marketed and sold the software while continuing to work as a store manager for Dumbo. *Id.* ¶ 58.

Thereafter, POC and Simply Moving incorporated the software into their website. *Id.* ¶ 42. The only difference in the software was "a change in the 'Guaranteed Price' algorithm to ensure that any quote generated by POC and Simply [Moving] would be lower than the quoted price offered by Dumbo." *Id.* The defendants used their unauthorized access to Dumbo's software to gain an immediate competitive advantage over Dumbo. *Id.* ¶ 43.

Dumbo learned that POC and Simply Moving were using unauthorized copies of the software in August 2020. *Id.* ¶ 44. This occurred after potential customers informed Dumbo that they had obtained quotes from POC and Simply Moving "that looked substantially similar to the form of quote used by Dumbo, but the prices quoted by POC and Simply [Moving] were at a discount to the Guaranteed Price provided by Dumbo's algorithm." *Id.* Thereafter, Dumbo contacted IT Dev Group to discuss the issue. *Id.* ¶ 47. Dumbo and IT Dev Group discovered that in June 2018, Plokhykh used his IT Dev Group credentials to access files containing Dumbo's software and source code. *Id.* ¶ 48. Plokhykh was not authorized to access those files. *Id.* ¶¶ 49–50.

In August 2020, Dumbo terminated Plokhykh's employment and IT Dev Group terminated its relationship with him. *Id.* ¶¶ 51–52. As of August 2022, Plokhykh continued to market and sell the software to competitors, and POC, Simply Moving, Marcali, and Popovic continued to benefit from the use of the software. *Id.* ¶¶ 59–60.

### B. Procedural History

Dumbo filed the instant complaint on June 17, 2022, Doc. 1, and amended it for the first time on September 6, 2022, Doc. 11.[8] The Court granted the defendants' request for an initial extension of time to answer or otherwise respond to the complaint on September 21, 2022, and September 28, 2022. Docs. 20, 26.

On December 1, 2022, the Court held a pre-motion conference in anticipation of the defendants' instant motions to dismiss. *See* Min. Entry dated Dec. 1, 2022. The Court provided the parties with a briefing schedule, *id.*, and the motions were fully briefed on April 7, 2023, Doc. 62.

## II. LEGAL STANDARD

Before the Court are the defendants' motions to dismiss and Dumbo's motion requesting leave to amend the FAC. Docs. 40, 43, 46, 53.

### A. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Christie's Int'l PLC*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).

---

[8] However, as the defendants underscore, Dumbo previously brought a complaint in New York Supreme Court in March 2022. Doc. 42-4 (alleging trade secrets, unfair competition, unjust enrichment, tortious interference, trademark infringement, and trademark dilution claims). In that action, Dumbo sued POC, Simply Moving, Popovic, and Marcali. *See* No. 22-cv-3349. After the state court complaint was removed to this Court on April 25, 2022, *see id.* Doc. 1, Dumbo voluntarily dismissed the action without prejudice, Doc. 45-5.

6

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

**B. Rule 15**

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the Court's leave.  Under section 15(a)(2), a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15.  Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted) (quoting *McCarthy v. Dun & Bradstreet*

7

*Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). This is a permissive standard since there is a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks omitted) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).

The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). In determining whether an amendment is futile, the Court evaluates the amended complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006); *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Following this standard, the Court accepts the Plaintiff's factual allegations as true and draws reasonable inferences in favor of the Plaintiff. *Id.* at 87–88. Beyond these considerations, the Court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend. *See Ricciuti*, 941 F.2d at 123–124 (noting that the plaintiff is not required to prove his case at this stage). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g.*, *Allison v. Clos-ette Too, L.L.C.*, 14 Civ. 1618 (LAK)(JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

## III. DISCUSSION

### A. Dismissal

Defendants move to dismiss all claims in the complaint with prejudice. Docs. 40, 43, 46. As filed, the FAC contained eighteen claims.[9] Doc. 11. However, after the defendants filed their motions to dismiss, Dumbo withdrew causes of action 5 through 8, 10, and 12 through 18, in addition to its prior demand for statutory damages and attorney's fees on its copyright claims.[10] Doc. 54 at 7. Accordingly, there are six remaining claims, which the Court breaks into groups in considering the parties' motions to dismiss. The claims are grouped as follows: (1) copyright infringement claims; (2) trade secrets claims; (3) remaining state law claims. The Court takes each group of claims in turn.

#### i. Copyright Infringement Claims

Dumbo brings two counts of copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 502, 504, and 505.[11] Doc. 11 ¶¶ 61–94.

---

[9] Specifically, the complaint alleged claims for copyright infringement under federal law against POC, Simply Moving, Marcali, and Popovic, and Plokhykh, in causes of action one and two, Doc. 11 ¶¶ 61–94; misappropriation of trade secrets under federal law against POC, Simply Moving, Marcali, Popovic, and Plokhykh, in causes of action three and four, id. ¶¶ 95–119; misappropriation of trade secrets under New York law against POC, Simply Moving, Marcali, Popovic, and Plokhykh, in causes of action five and six, id. ¶¶ 120–41; violation of the Computer Fraud and Abuse Act of 1986 ("CFAA") against Plokhykh, in cause of action seven, id. ¶¶ 142–52; violation of the Digital Millennium Copyright Act ("DMCA") against all defendants, in cause of action eight, id. ¶¶ 153–62; breach of fiduciary duty against Plokhykh, in cause of action nine, id. ¶¶ 163–72; breach of the duty of loyalty against Plokhykh, in cause of action ten, id. ¶¶ 173–80; aiding and abetting breach of fiduciary duty and duty of loyalty against POC, Simply Moving, Marcali, and Popovic, in cause of action eleven, id. ¶¶ 181–49; tortious interference with prospective business advantage against all defendants, in cause of action twelve, id. ¶¶ 195–216; fraud against Plokhykh, in cause of action thirteen, id. ¶¶ 217–44; aiding and abetting fraud against POC, Simply Moving, Marcali, and Popovic, in cause of action fourteen, id. ¶¶ 245–56; unfair competition against all defendants, in cause of action fifteen, id. ¶¶ 257–63; conversion against all defendants, in cause of action sixteen, id. ¶¶ 264–73; unjust enrichment against all defendants, in cause of action seventeen, id. ¶¶ 274–81; and an accounting against POC, Simply Moving, Marcali, Popovic, and Plokhykh, in cause of action eighteen, id. ¶¶ 282–87.

[10] The parties disagree as to whether the dismissal of those claims should be with or without prejudice. *Compare* Doc. 54 at 7 *with* Doc. 56 at 6. The Court addresses these arguments below.

[11] The FAC contained a demand for statutory damages and attorney's fees pursuant to these sections, Doc. 11 ¶¶ 78, 94; however, Dumbo has since withdrawn that claim, Doc. 54 at 7.

9

To establish copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). Courts in the Southern District of New York have held that to meet the requirements of Rule 8(a), a complaint must plead with specificity the acts by which a defendant has committed copyright infringement. *See e.g.*, *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000). Specifically, a plaintiff must allege (1) which specific original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) (citing *Franklin Elec. Publishers v. Unisonic Prod. Corp.*, 763 F. Supp. 1, 4 (S.D.N.Y. 1991)). "[A]n infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement;" indeed, the Second Circuit has "applied the three-year limitations period to bar only recovery for infringing acts occurring outside the three-year period." *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (citing *Merchant v. Levy*, 92 F.3d 51, 57 n.8 (2d Cir. 1996)).

The defendants argue that the copyright claims must be dismissed because the complaint fails to sufficiently establish Dumbos' ownership of the software at issue. Doc. 41 at 12–13; Doc. 56 at 9–13. In their opening briefs, they identify a discrepancy between the FAC and Dumbo's copyright paperwork, namely, that while the FAC alleges that Dumbo retained *IT Dev Group* to develop the software and Dumbo would own the intellectual property rights in it, Dumbo's application to register the copyright directly contradicts such allegations. Doc. 41 at 12. Indeed, the registration confirms that the software was authored by *Levgen Didenko*, and not

10

IT Dev Group, and that Didenko thereafter transferred ownership to Dumbo. *Id.*; Doc. 45-1 at 3. As a result, the defendants argue that the FAC's allegations are undermined by Dumbo's copyright application and registration. Doc. 41 at 13. In other words, because the complaint and the copyright paperwork contain different information regarding who created and transferred ownership of the software, the defendants contend that Dumbo failed to plausibly allege ownership. *Id.*

These arguments are unavailing, particularly at this stage of the proceedings. To be sure, the copyright documents—which are incorporated here by reference as set forth above—do indeed indicate that it was Didenko, and not his company IT Dev Group, who authored the software. Doc. 45-1 at 3; Doc. 45-2 at 5–7. But this makes no difference. Indeed, the paperwork also states that copyright ownership in the work was subsequently transferred from Didenko to Dumbo via a written agreement. Doc. 45-2 at 7. In fact, the United States Copyright Office did not approve the application until it received confirmation of this transfer. *Id.* at 5–8 (showing that the Copyright Office requested documentation regarding how Dumbo acquired ownership of the copyright given that it was created by Levgen Didenko, and the application was approved following confirmation regarding the transfer). Accordingly, despite the discrepancy regarding *who* authored the software and transferred ownership to Dumbo, the incorporated documents plausibly show that Dumbo did indeed acquire ownership of the software. The defendants concede that the copyright paperwork they rely on confirms that "Didenko transferred ownership of the [s]oftware to Dumbo." Doc. 41 at 12.

As set forth above, the applicable caselaw makes clear that the Court must "draw all reasonable inferences in the plaintiff's favor" at this stage of the proceedings. *Christie's Int'l PLC*, 699 F.3d at 145. Here, taking into consideration the FAC, the incorporated copyright

documents, and the parties arguments, the Court concludes that Dumbo "is entitled to offer evidence to support [its copyright] claims," particularly where the defendants only challenge the claims as to ownership, and the record sets out a plausible violation of the Copyright Act. *Nath*, 893 F. Supp. 2d at 615; *see also* Doc. 56 at 9 (noting that at this juncture, "Defendants only challenge . . . the sufficiency of Dumbo's alleged ownership (reserving all of their rights to contest any alleged copying and all other elements of the claim)"). Accordingly, the motion to dismiss the first and second causes of action in the FAC is denied.

### ii.   Trade Secrets Claims

The FAC also sets out trade secrets allegations against POC, Simply Moving, Marcali, Popovic, and Plokhykh. Doc. 11 ¶¶ 95–119.

To state a claim for misappropriation of a trade secret, "a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Medidata Solutions, Inc. v. Veeva Sys. Inc.*, No. 17 Civ. 589, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018) (citations omitted). Improper means include "inducement of a breach of duty to maintain secrecy[,]" such as a contractual agreement not to disclose information. *Id.* (citations omitted).

Trade secrets are defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes[.]" 18 U.S.C. § 1839(3). However, to qualify as a trade secret, the owner of

the trade secret must have taken "reasonable measures" to keep it a secret and the trade secret itself must acquire economic value from not being generally known or easily obtained by others who would gain economic value from the use or disclosure of it. *Id.*

The defendants argue that the FAC failed to sufficiently allege that Dumbo (1) identified the trade secrets with sufficient specificity, (2) took reasonable measures to protect its trade secrets, and (3) alleged facts showing that the defendants misappropriated its trade secrets by improper means. Doc. 41 at 14–21; *see also* Doc. 54 at 14.

The Court rejects these arguments. First, Dumbo has clearly and sufficiently identified its trade secrets at this stage of the proceedings. As set forth above, the complaint identifies the software and describes its function in detail; indeed, it sets out that the software "functions to enable Dumbo to develop and track business leads, book customer moves, schedule moves and assign trucks and crews for moves[,] and track moves[,] in real time." Doc. 11 ¶ 22. The complaint further states that the software "was created using . . . knowledge . . . that Dumbo acquired through years . . . in the moving business," and further goes on to identify some of its specific features. *Id.* ¶¶ 23–24. For example, the complaint states that the software generates a "Guaranteed Price" that Dumbo charges its customers using a proprietary algorithm created by Dumbo that "considers many factors." *Id.* ¶ 24. And it further states that the software generates instant quotes, allows potential customers to schedule and book moves, makes digital bills of lading available for all shipments and deliveries, aggregates data, provides an online payment system, and facilitates communication with customers. *Id.* ¶¶ 26, 27. Furthermore, the complaint alleges that Dumbo invested over $100,000 to develop the software and it allowed Dumbo to double its revenue within two years of its implementation. *Id.* ¶¶ 28–30. Contrary to defendants' arguments, Dumbo does not here "rely upon 'nebulous descriptions'" in alleging its

trade secrets. *See* Doc. 41 at 19 (quoting *TRB Acquisitions LLC v. Yedid*, No. 20 Civ. 0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021)). Unlike the complaint in *TRB Acquisitions LLC*, the allegations here do indeed "offer [] particulars of how [the software] . . . function[s]," and it provides sufficient information "for the Court to discern exactly what information it alleges [that the defendants] misappropriated]." *See TRB Acquisitions LLC*, 2021 WL 293122, at *2.

The complaint also sufficiently pleads that Dumbo took reasonable steps to protect its trade secrets. As noted above, it states that Dumbo entered an agreement with IT Dev Group wherein it was established "that Dumbo would have exclusive ownership of all rights and interests in the software." Doc. 11 ¶ 46. And the complaint further alleges—among other things—that Dumbo: did not provide *any entity* with a license or permission to disseminate the software; did not share the software with any third parties; did not give its employees or independent contractors access to the software or its source code; and it stored its source code in an independent, secured server. *Id.* In other words, the complaint clearly states that Dumbo asserted that the software was *its* proprietary information. *See Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (stating that an alleged trade secret could be legally protected "by executing a nondisclosure or licensing agreement *or by stipulating* . . . that the [property] was [] proprietary information"). To be sure, the FAC does not include information regarding nondisclosure or confidentiality agreements.[12] *See* Doc. 41 at 15. But such agreements are not the *sine qua non* of protection of trade secrets, particularly where the Court is assessing the plausibility of the asserted claims. *See Mason*, 848 F. App'x at 450. Here, the complaint clearly asserts that "Dumbo retained [IT Dev Group] to collaborate on the

---

[12] The proposed SAC states that Plokhykh was subject to confidentiality and nondisclosure agreements. *See* Doc. 53-2 ¶ 122.

14

development of an exclusive and proprietary software system" that would be solely owned by Dumbo, and that Dumbo took numerous steps to prevent the dissemination of the software. Doc. 11 ¶¶ 20–21, 46. All told, Dumbo has plausibly alleged that it took reasonable steps to protect its trade secrets.[13]

Finally, the FAC plausibly pleads that the defendants misappropriated the trade secrets here. It states that the defendant purchasers were aware that the software was "solely and exclusively owned by Dumbo," but they nevertheless acquired the software from Plokhykh "knowing that [he] was an employee of Dumbo and that he was not authorized to sell, transfer, or license a copy of the Exclusive Software . . . ." Doc. 11 ¶¶ 104, 106, 115, 117.

The defendants insist that complaint's allegations are "contradicted . . . by the fact that Plokhykh sold or licensed software to them which Dumbo concedes [he] had the 'ability to access' using his authorized username and password." Doc. 41 at 21. However, the fact that Plokhykh had access to the software using his IT Dev username and password does not doom Dumbo's claim at this stage. Indeed, the complaint clearly alleges that "[a]lthough Plokhykh did not have access to the [e]xclusive [s]oftware through Dumbo's computers and was not authorized by Dumbo to have access to the [software]," he accessed it, copied it, and sold it "without Dumbo's knowledge and consent." Doc. 11 ¶¶ 39, 40, 41. In other words, the complaint clearly

---

[13] The defendants assert that "Dumbo fails to address in its Complaint [] that IT Dev publically [sic] displays as part of its 'portfolio' of completed software projects not only Dumbo's Software . . ., but also QQ Moving's software and another software package known as 'Moving.'" Doc. 41 at 17. They then argue that this shows that IT Dev "had no legal obligation to keep the Software and its source code confidential and that Dumbo is not the exclusive owner of the Software – again fatal to Dumbo's claim." *Id.* As a preliminary matter, the Court is not in possession of IT Dev Group's public website material, nor is it otherwise described in the FAC. Nonetheless, displaying the completed project is not the same as disclosing the trade secrets behind that project. In other words, it is possible for IT Dev Group to have publicly displayed the outward-facing product—for example, a user interface for a website—without disclosing the component parts of that interface, including source code and algorithms governing the technology. Defendants' argument is thus unavailing. *See* Doc. 54 at 21 ("There is no allegation that the underlying source code for the Exclusive Software was disclosed by IT Dev. By its own admissions, POC's argument looks beyond the pleadings, which is improper on a motion to dismiss.").

15

sets forth that Plokhykh acquired the source code by improper means, without Dumbo's consent. *See* Doc. 54 at 18 (citing 18 U.S.C. §§ 1839(5) and 1839(6)(A)).

### iii. Remaining State Law Claims

The defendants also move to dismiss the remaining state law claims on the basis that they are barred by the statute of limitations and are otherwise insufficiently pleaded. Doc. 41 at 24–25; Doc. 56 at 13–14; Doc. 57 at 5–6. The following state law claims remain: breach of fiduciary duty against Plokhykh, breach of the duty of loyalty against Plokhykh, and aiding and abetting breach of fiduciary duty against POC, Simply Moving, Marcali, and Popovic.

The parties agree that "New York does not provide a single limitations period for breach of fiduciary duty claims." Doc. 54 at 25; Doc. 57 at 6. "Generally, the applicable statute of limitations for breach of fiduciary claims depends upon the substantive remedy sought." *Kaufman v. Cohen*, 307 A.D.2d 113, 118 (1st Dep't 2003) (citations omitted). Where the relief sought is equitable, a six-year period applies; however, where the suit seeks money damages, courts view such allegations as alleging "injuries to property," and they apply a three-year statute of limitations. *Id.* (citations omitted).

The Court concludes that the remaining state law claims are governed by a three-year statute of limitations. Indeed, as noted by the defendants, Dumbo withdrew its fraud allegations and its fiduciary duty claims "mirror the underlying misappropriation and copyright infringement claims." Doc. 57 at 6. Additionally, as the defendants also point out, Dumbo has been aware of its alleged claims since at least August 2020, and it did not pursue relief until 2022. *Id.* at 7; Doc. 11 ¶ 44; *see also* Doc. 1. In other words, Dumbo "sat on its rights" for approximately two years. Accordingly, the record shows that "Dumbo's primary relief is monetary damages," Doc. 57 at 7, and the three-year statute of limitations applies here, *Kaufman*, 307 A.D.2d at 118.

16

Dumbo's remaining state law claims are thus time-barred. Indeed, the complaint alleges that Plokhykh's unauthorized access, copy, and sale of the software took place around June 2018. Doc. 11 ¶ 40. And Dumbo reasserted that this occurred in June 2018 during the Court's pre-motion conference in anticipation of the instant motions to dismiss. Conference Tr., Doc. 48 at 5:9–5:13 (asserting that Dumbo believed Plokhykh "provided the software to the other moving companies" in June of 2018). Accordingly, since Dumbo filed this case more than three years after the claims accrued, they are barred by the statute of limitations. As the defendants note, "Dumbo does not dispute that these claims would be barred if a three year statute of limitations applie[s]."[14] Doc. 57 at 7–8.

### B. Amendment

Dumbo requests leave to amend the FAC. Doc. 54 at 6–8. The defendants oppose the request. Doc. 56 at 7–9. As set forth above, motions to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Grubman*, 568 F.3d at 334.

#### i. Withdrawn Claims

The Court noted above that Dumbo withdrew most of the claims in the FAC, and the parties disagree as to whether the dismissal of those claims should be with or without prejudice. *Compare* Doc. 54 at 7 *with* Doc. 56 at 6. Because it would be unduly prejudicial to the defendants to allow Dumbo to re-plead its withdrawn claims, those claims are dismissed with prejudice. As the defendants note in their briefs, Dumbo has had multiple opportunities to

---

[14] Because the Court concludes that remaining the state law claims are barred by the applicable statute of limitations, it will not separately assess the defendants' other deficiency arguments.

properly plead these claims.[15]  Doc. 56 at 8 (arguing that Dumbo is effectively seeking a "seventh bite at the apple" at alleging its claims, which it learned about in 2020).  And despite knowing the defendants' intentions to argue for their dismissal, it chose to abandon the claims only *after* the defendants expended significant time and effort into making their dismissal arguments in their opening briefs.  Accordingly, justice would not be served by allowing Dumbo to make yet another attempt at properly alleging its withdrawn claims at some future point in time.[16]  *See generally* Fed. R. Civ. P. 15(a)(2).

### ii. Remaining Claims

The Court also denies Dumbo's request for leave to amend the complaint as to the state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of the duty of loyalty.  *See* Doc. 53-2 ¶¶ 139–70.  As set forth above, those claims are barred by the statute of limitations, and any amendment would thus be futile.  *See Dougherty*, 282 F.3d 88.

Dumbo may, however, amend the complaint as to its copyright and misappropriation claims.  As set forth above, the Court has considered these allegations and reviewed the proposed amendments in the SAC, *see* Doc. 53-2 ¶¶ 73–138, and it has determined that amendment would not be futile, *Dougherty*, 282 F.3d 88.  Additionally, the proposed amendments would facilitate a merits resolution of these four remaining claims.  *See generally Williams*, 659 F.3d at 212–13.

Accordingly, the motion to amend is granted in part and denied in part.

---

[15] Dumbo has amended the complaint in this case on one prior occasion.  Doc. 11.  However, as set forth above, Dumbo previously brought similar claims against several of the defendants in state court and voluntarily dismissed them when the case was removed to this Court.  *See* No. 22-cv-3349.

[16] Additionally, for the reasons set forth herein, amendment would be futile as to several of the withdrawn state law claims—specifically, Dumbo's claims for tortious interference, unfair competition, and conversion—because they are time-barred.  *See* Doc. 41 at 24.  Indeed, just as the fiduciary duty and duty of loyalty claims, all of these claims are similarly governed by a three-year statute of limitations.  *See generally* CPLR §§ 214(3) and (4).

18

IV.  **CONCLUSION**

For the foregoing reasons, the defendants' motions to dismiss the FAC is GRANTED in PART and DENIED in PART, and Dumbo's motion requesting leave to amend the FAC is GRANTED in PART and DENIED in PART.  Specifically, the Court dismisses with prejudice the following claims:

- All of the claims withdrawn by Dumbo;
- Dumbo's state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and breach of the duty of loyalty;

By September 4, 2023, Dumbo may replead the following claims in a Second Amended Complaint:

- Copyright Infringement against Plokhykh;
- Copyright Infringement against POC, Simply Moving, Marcali, and Popovic;
- Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016 against POC, Popovic, and Plokhykh;
- Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016 against Simply Moving, Marcali, and Plokhykh.

The Clerk of Court is respectfully directed to terminate the pending motions, Docs. 40, 43, 46, 53.

The parties are directed to appear for a telephonic status conference at 3:30 PM on Friday, October 6, 2023.  The parties are directed to dial (877) 411-9748 and enter access code 3029857# when prompted.

It is SO ORDERED.

Dated:   August 21, 2023
        New York, New York

                                             Edgardo Ramos, U.S.D.J.