## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUMBO MOVING & STORAGE, INC.,<br><br>                                        Plaintiff,<br><br>                    v.<br><br>PIECE OF CAKE MOVING & STORAGE LLC, SIMPLY MOVING LLC, SIMPLY MOVING & STORAGE LLC, VOJIN POPOVIC, STEFAN MARCALI and VOLODYMYR PLOKHYKH,<br><br>                                        Defendants. | Case No. 22-CV-05138<br><br><br>**SECOND AMENDED COMPLAINT**<br><br>[Demand for a Jury Trial] |

Plaintiff Dumbo Moving & Storage Inc. ("Plaintiff" or "Dumbo"), by and through its undersigned counsel, for its Complaint against Defendants Piece of Cake Moving & Storage LLC, Simply Moving LLC, Simply Moving & Storage LLC, Vojin Popovic, Stefan Marcali and Volodymyr Plokhykh (collectively, the "Defendants") alleges:

### NATURE OF THE ACTION

1.     This action arises out of various acts of malfeasance committed by the Defendants against Plaintiff, including the misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016 ("DTSA") (18 U.S.C. § 1836 et seq.), and copyright infringement (17 U.S.C. § 501 et seq.).  Plaintiff seeks to hold Defendants liable for compensatory and punitive damages and to secure a permanent injunction prohibiting Defendants from continuing to engage in the unlawful conduct alleged herein.

### THE PARTIES

2.     Plaintiff is a New York Corporation with offices located at 15 N Oxford St, Brooklyn, NY 11205.

3. Upon information and belief, Defendant Piece of Cake Moving & Storage LLC ("POC") is a New York Domestic Limited Liability Company with offices located at 287 Park Ave S, Suite 320, New York, NY 10010.

4. Upon information and belief, Defendant Simply Moving LLC ("Simply Moving") is a New York Domestic Limited Liability Company with offices located at 837 Washington Ave, Apt 7H, Bronx, NY 10451.

5. Upon information and belief, Simply Moving Storage LLC ("Simply Storage") is a New Jersey limited liability company with offices located at 261 Morrissee Avenue, Haledon, NJ 07508. ("Simply Moving" and "Simply Storage" may be referred to collectively as "Simply").

6. Upon information and belief, Defendant Vojin Popovic ("Popovic") is an individual and an owner of Defendant Piece of Cake Moving & Storage LLC with offices located at 287 Park Ave S, Suite 320, New York, NY 10010.

7. Upon information and belief, Popovic and/or POC became the owner of Simply or substantially all of Simply's assets at some point during July or August 2022.

8. Upon information and belief, Defendant Stefan Marcali ("Marcali") is an individual and was the owner of Defendants Simply Moving and Simply Storage with offices located at 837 Washington Ave, Apt 7H, Bronx, NY 10451 from the time of formation through July or August 2022.

9. Upon information and belief, Defendant Volodymyr Plokhykh ("Plokhykh") is an individual residing at 621 Post Hill Road, Henryville, PA 18332.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 because the causes of action asserted by Plaintiff involve federal questions arising under the

Copyright Act, as amended, 17 U.S.C. §§ 101 et seq., and the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 et seq.

11.    Defendants are subject to the personal jurisdiction of this court because Popovic, Marcali and Plokhyhk are individuals residing in the state of New York and POC and Simply Moving are entities formed under the laws of the state of New York with their principal places of business located in this District.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (c) and 28 U.S.C. § 1400 because a substantial part of the events giving rise to the claims set forth herein occurred in this judicial district and some of the defendants are, upon information and belief, domiciled in the Southern District of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.    DUMBO MOVING & STORAGE, INC.

13.    Plaintiff Dumbo Moving & Storage, Inc. ("Dumbo" or "Plaintiff") is a moving and storage company based in Brooklyn, New York.    Dumbo started its business in 2006 as a small local moving company with one (1) moving truck.    Dumbo has since grown to operate a moving and storage business with over fifty-five (55) trucks.    Today, Dumbo is one of the largest regional moving companies in the tri-state area.    Dumbo also provides long distance moving services to locations throughout the United States to its customers.

### B.    DUMBO DEVELOPS EXCLUSIVE SOFTWARE

14.    In or around 2016, Dumbo determined it would have a competitive advantage if it could use its website as the hub for a fully automated central management system to coordinate customer orders and fulfillment of those orders by assignment of trucks and crews needed to service those orders, tracking job performance with real time updates, while also providing customers with and leads with instant price quotes based on a proprietary algorithm.

15.     Dumbo determined that an automated central management system would significantly reduce the amount of human involvement required to service customers and fulfill jobs, thereby reducing the cost of providing services to customers and increasing profitability.

16.     Dumbo could not find any "off the shelf" software that could fulfill its needs since nothing like the system envisioned by Dumbo existed for the moving or logistics industries at the time.

17.     In 2016, Lior Rachmany ("Rachmany"), who is the sole owner and shareholder of Dumbo discussed his concept for an automated central management system with Plokhykh, who was, at that time, a trusted full-time employee for Dumbo.

18.     Plokhykh introduced Rachmany to IT Dev Group  ("IT Dev UA"), which is, upon information and belief, a Ukrainian business entity with offices located at Yaroslava Mudrogo Street, 10, Kharkiv, Kharkiv Oblast, Ukraine 6100.   IT Dev UA is in the business of developing and coding custom software in collaboration with companies in various industries.[1]

19.     Upon information and belief, IT Dev UA is solely owned by Levgen Didenko ("Didenko" or "Eugene").

20.     Upon information and belief, Plokhykh formed a business relationship with Didenko and IT Dev UA through his then-girlfriend, Iryna Shcherban ("Shcherban"), who has known Didenko for more than twenty (20) years.

21.     After speaking with Didenko, Dumbo retained IT Dev UA to collaborate on the development of an exclusive and proprietary software system referred to as the "Moving Company Automated Central Management System" (the "Exclusive Software") for Dumbo's proprietary and exclusive benefit.

---

[1] Upon information and belief, IT Dev UA's business operations have been significantly impacted by the ongoing war between the Ukraine and the Russian Federation which began on February 23, 2022.

22.    Didenko was advised by Dumbo that it considered the features and operation of the Exclusive Software to embody information confidential to Dumbo.  Didenko agreed that he and IT Dev UA would only use Dumbo's confidential information to create and provide the Exclusive Software to Dumbo and would not disclose Dumbo's confidential information to third parties.

23.    In email communications with Dumbo, Didenko, on behalf of himself and IT Dev UA, agreed that the Exclusive Software and all software and intellectual property created by IT Dev UA on behalf of Dumbo was assigned to and owned by Dumbo.

24.    Upon information and belief, at or about the time Dumbo retained Didenko and IT Dev UA to collaborate on the development of the Exclusive Software, Shcherban created Shcherban, Inc., a corporation formed under the laws of the state of New York on January 19, 2016, for the limited purpose of serving as a conduit for the transfer of payments from U.S. clients to IT Dev UA.

25.    At Dumbo's request, on or about January 19, 2016, Shcherban, as "Owner Operator" of Shcherban, Inc., executed a confidentiality and non-disclosure agreements on behalf of Shcherban, Inc. in favor of Dumbo.  This confidentiality and non-disclosure agreements specifically prohibit Shcherban, Inc. from using or disclosing to third parties "any procedures, technical data, proprietary information, privileged communications or trade secrets entrusted to Owner/Operator . . . Proprietary information shall include any information about [Dumbo] or its services that is generally not known to the public at large."

26.    Upon information and belief, in late 2016, Shcherban changed the name of Shcherban, Inc. to IT Dev Group, Inc. ("IT Dev NY").

27.    In 2017, Shcherban, as President of IT Dev NY, executed a new Confidentiality and Non-Disclosure Agreement in favor of Dumbo, wherein IT Dev NY agreed that it would keep confidential and not disclose Dumbo's confidential information and trade secrets without Dumbo's express written consent, including "[c]omputer and technical data, such as software (source code,

object code, documentation, diagrams, flow charts, etc.), designs, drawings, specifications, models, data and client information contained therein."

28.     Upon information and belief, IT Dev NY had no role in the development of the Exclusive Software, aside from serving as a conduit for the transfer of payments from Dumbo to IT Dev UA and assisting IT Dev UA with marketing and sales of IT Dev UA's services in the United States.

29.     At Dumbo's request, on or about January 6, 2017, Defendant Plokhykh executed a non-disclosure and confidentiality agreement in Dumbo's favor on or about January 6, 2017 (the "Plokhykh NDA"), which imposes an affirmative duty on Plokhykh not to disclose Dumbo's Confidential Information, including but not limited to trade secrets.  In particular, the Plokhykh NDA specifically prohibits Plokhykh from using or disclosing "[c]omputer and technical data, such as software (source code, object code, documentation, diagrams, flow charts, etc.), designs, drawings, specifications, models, data and client information contained therein" without Dumbo's express written consent.

30.     Upon information and belief, the Exclusive Software includes novel features that were not previously incorporated in any software designed for the moving industry.  In particular, the Exclusive Software incorporates functions to enable Dumbo to develop and track business leads, book customer moves, schedule moves, assign trucks and crews for moves, and track moves in real time.  The Exclusive Software also provides Dumbo the ability to provide paperless invoices and bills of lading to customers, enables Dumbo to provide instant online customer support services, provides Dumbo the ability to track business analytics in real time.

31.     The Exclusive Software was created using knowledge about the moving business and marketplace that Dumbo acquired through years of successful experience in the industry. The Exclusive Software could generate a quote for potential clients, schedule and book the appointment,

schedule a moving truck and moving crew and accept payment for the moving job all in a matter of minutes, with limited direct involvement from Dumbo's staff.

32.     The Exclusive Software incorporated and integrated a combination of unique and novel features implemented in a manner not generally known in the industry previously that gave Dumbo an edge over its competition including, but not limited to:

a.  Communication tools that enable Dumbo to communicate with both customers and employees using Dumbo's website, obviating the need for paper printouts that were previously provided to employees and customers;

b.  Integrated scheduling, dispatch, and crew assignment tools, including advanced graphical user interface with status boards;

c.  Lead aggregation tools which group leads by specified parameters and filters;

d.  Digital bills of lading available for all shipments and deliveries, eliminating reliance on paper originals and copies;

e.  Customer Relationship Management (CRM) features that provide Dumbo the ability to follow up with customers, keep them up to date on special offers and increase lead generation by creating an automated list of customers and potential customers based on user interaction with the website;

f.  Seamless integration of data related to storage and moving services

g.  Data aggregation features, including the ability of Dumbo and its customers to track the status of any move in real time using an easy-to-follow map and graphical interface;

h.  An easy and seamless online payment system that enables customers to make payments online, with Dumbo employees receiving real time notice of the clearance of customer payments;

i.  Integrated and automated compensation calculation and payment processing for contractors and commissioned employees

33.     After considerable time, effort and money was spent to develop the Exclusive Software, the software worked as intended.

34.     Dumbo invested well over $100,000.00 to develop the Exclusive Software over a two

(2) year period, plus additional amounts necessary to continuously update the software and improve

functionality and security features.

35.     The Exclusive Software made Dumbo's operation far more efficient and profitable

than it had been before the software's implementation.

**C.     DUMBO'S INVESTMENT IN THE EXCLUSIVE SOFTWARE PROVED TO BE AN OUTSTANDING SUCCESS, SETTING A NEW STANDARD FOR THE MOVING INDUSTRY**

36.     Dumbo's investment in developing the Exclusive Software and trade secrets

embodied therein proved to be an outstanding investment.

37.     In 2020, Dumbo generated more than $36,000,000.00 in revenue, which is more than

double the $17,500,000 in revenue that Dumbo generated in 2017.  Dumbo's increase in revenue is

attributable in large part to the launch of the Exclusive Software in 2018.

**D.     PLOKHYKH, ACTING IN CONCERT WITH POC, SIMPLY, POPOVIC AND MARCALI, MISAPPROPRIATED DUMBO'S TRADE SECRETS, COPYRIGHTED MATERIALS AND PROPRIETARY INFORMATION, INCLUDING THE EXCLUSIVE SOFTWARE**

38.     The success of Dumbo's Exclusive Software did not go without notice by its

competitors, none of whom had software that could automate the process of booking customers,

scheduling moves, assigning trucks and crews, and managing the entire moving experience from

beginning to end.

39.     Plokhykh was employed by Dumbo from 2015 through 2020.

40.     Dumbo believed Plokhykh was a valued and trusted employee and, in fact, promoted

him to the position of store manager in 2017.

41.     In addition to his other responsibilities as an employee of Dumbo, due to his

relationship with Didenko and his language skills, Plokhykh also served as a *de facto* "project

manager" serving as an intermediary between Dumbo and IT Dev UA.

42.     Upon information and belief, as a store manager for Dumbo, Plokhykh saw how successful the Exclusive Software was for Dumbo and knew it was a valuable asset that could be marketed and sold to Dumbo's competitors.

43.     Upon information and belief, Plokhykh had long standing business and/or personal relationships with Popovic and Marcali—both of whom worked for or with Dumbo in the past.

44.     In particular, Popovic personally provided services for Dumbo until 2017, at which time he formed POC.

45.     Upon information and belief, POC began operating its business as an independent contractor for Dumbo in 2017.

46.     To protect its interests in its confidential information and trade secrets, Popovic, on behalf of POC, executed a confidentiality and non-disclosure agreement in favor of Dumbo on or about December 31, 2017 (the "POC NDA").

47.     The POC NDA specifically prohibits POC and Popovic from using or disclosing "[c]omputer and technical data, such as software (source code, object code, documentation, diagrams, flow charts, etc.), designs, drawings, specifications, models, data and client information contained therein" without Dumbo's express written consent.

48.     Marcali and, later Simply, also worked as independent contractors for Dumbo until 2017.  Upon information and belief, Marcali and Simply also executed confidentiality and non-disclosure agreements in favor of Dumbo that also prohibited Marcali and Simply from using Dumbo's confidential information and trade secrets, including the Exclusive Software.

49.     Upon information and belief, in or around 2017 or 2018, POC, Simply, Popovic and Marcali knew that Plokhykh was employed by Dumbo at that point in time and that he had been involved with the development of the Exclusive Software,

50.     Upon information and belief, in or around 2017 or 2017 POC, Simply, Popovic and Marcali informed Plokhykh they were interested in acquiring the Exclusive Software and asked Plokhykh if he could get them copy of the Exclusive Software in exchange for monetary compensation.

51.     Upon information and belief, at the time POC, Simply, Popovic and Marcali asked Plokhykh if he could acquire and sell a copy of the Exclusive Software to them, they also knew that Plokhykh was subject to confidentiality obligations to Dumbo, since they were also  required by Dumbo to enter  their own confidentiality and non-disclosure agreements.

52.     Although Plokhykh did not have access to the Exclusive Software through Dumbo's computers and was not authorized by Dumbo to have access to the Exclusive Software, Plokhykh, without Dumbo's knowledge and consent, had the ability to access to the Exclusive Software and source code through his own separate relationship with IT Dev NY and/or IT Dev UA.

53.     Upon information and belief, Plokhykh used a username and password for IT Dev UA to gain access to the Exclusive Software and make an unauthorized copy of the Exclusive Software without Dumbo's knowledge or consent in or around June 2018.

54.     Upon information and belief, in the spring or summer of 2018, following the encouragement of POC, Popovic, Simply and Marcali purchased unauthorized copies of the Exclusive Software and the source code for this software from Plokhykh.

55.     POC and Simply incorporated the Exclusive Software into their own business operations.

56.     As a direct and proximate result of the Defendants' actions, POC, Popovic, Simply and Marcali used Dumbo's Exclusive Software to gain an immediate competitive advantage over Dumbo without having to invest the time and money required to develop their own competing software.

**E.    PLOKHYKH'S MISAPPROPRIATION OF THE EXCLUSIVE SOFTWARE WAS DISCOVERED BY DUMBO IN OR AROUND AUGUST 2020**

57.    In or around July or August 2020, Dumbo first learned that POC and Simply were using unauthorized copies of the Exclusive Software.  This fact was discovered when Dumbo received emails from potential customers informing Dumbo that they had received email communications from POC and Simply that looked substantially similar to the form prepared by Dumbo's Exclusive Software.

58.    After conducting an investigation, Dumbo determined that it was highly likely that POC and Simply had copied and were using Dumbo's Exclusive Software, including its proprietary source code.

59.    The fact that POC and Simply were able to gain unauthorized access to the Exclusive Software was surprising because Dumbo had established policies and procedures to secure and protect the Exclusive Software and its source code, including at least the following measures:

    a.    although IT Dev UA assisted Dumbo with the technical aspects of developing the source code for the Exclusive Software, they agreed that they would not disclose Dumbo's confidential information and that Dumbo would have exclusive ownership of all rights and interests in the Exclusive Software;

    b.    Dumbo did not provide any person or entity with a license or permission to disseminate the Exclusive Software at any time;

    c.    Dumbo did not share the Exclusive Software with any third parties;

    d.    Dumbo did not give its employees or independent contractors (except for IT Dev UA) access to the source code for the Exclusive Software or permission to access the source code for the Exclusive Software;

    e.    Dumbo employees and contractors who used the Exclusive Software in connection with their job responsibilities could only observe certain features of the operation of the Exclusive Software but did not have access to the source code.  Moreover, such employees were subject confidentiality and non-disclosure agreements with Dumbo that prohibited their disclosure of any information concerning the Exclusive Software and its features to Dumbo;

  f. the Exclusive Software and its source code is stored on a separate secured server maintained for Dumbo's benefit by IT Dev UA, which had an obligation to secure and safeguard the Exclusive Software and the source code for Dumbo; and

  g. IT Dev UA was solely responsible for maintaining and updating the Exclusive Software, including providing data security and customer privacy features consistent with industry standards on an ongoing basis.

60. In the Summer of 2020, Dumbo informed IT Dev UA that Dumbo believed there may have been an unauthorized access to the source code for the Exclusive Software and asked IT Dev UA to investigate to determine how the source code was accessed and who was responsible for the breach.

61. After an investigation to determine how the Exclusive Software and its source code was leaked, Dumbo was informed by IT Dev UA that, in or around June 2018, Plokhykh accessed and made an unauthorized copy of Dumbo's Exclusive Software and source code.

62. Upon information and belief, Plokhykh had no authority or permission from Dumbo or IT Dev UA to access the source code for the Exclusive Software and Plokhykh certainly did not have authority to make a copy of the Exclusive Software and source code.

63. Upon information and belief, Plokhykh sold the Exclusive Software to POC, Simply, Popovic and Marcali without Dumbo's permission in violation of his obligations under the Plokhykh NDA

64. Plokhykh's employment relationship with Dumbo was subsequently terminated.

65. Upon information and belief, after learning of Plokhykh's unauthorized actions, IT Dev UA removed all access Plokhykh may have had to IT Dev UA's servers and severed its relationship with him.

66. Upon information and belief, Plokhykh sold and continues to actively market and sell Dumbo's Exclusive Software and source code to Dumbo's competitors.

**F.    IN 2018, PLOKHYKH STARTS A NEW BUSINESS COMPETING DIRECTLY WITH DUMBO WHILE STILL BEING A FULL-TIME EMPLOYEE OF DUMBO**

67.     Between 2018 and 2020, Plokhykh was a full-time employee for Dumbo.

68.     Upon information and belief, without Dumbo's knowledge or consent, in 2018, Plokhykh, while still employed by Dumbo, started his own business under the name "Quick Quote Moving" or "QQMoving" ("QQMoving").

69.     On or about June 19, 2018, QQMoving launched a website using the uniform source locator (URL) https://qqmoving.com whereby QQMoving marketed and sold moving services for itself and Dumbo's direct competitors.

70.     Upon information and belief, Plokhykh holds himself out as being the Chief Executive Officer of QQMoving since 2018.

71.     Plokhykh did not disclose to Dumbo that he was operating a competing business and, in fact, intentionally concealed this information from Dumbo.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Copyright Infringement—Against Plokhykh)

72.     Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

73.     Plaintiff is the owner of an original copyrightable work known and referred to herein as the Exclusive Software.

74.     Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. and has secured exclusive rights in the Exclusive Software and has received its copyright registration for the Exclusive Software with the Copyright Office in accordance with its rules and regulations.

75.     Pursuant to 17 U.S.C. § 411(a), the Exclusive Software was registered (Registration Number TXu 2-330-076) with the Copyright Office on July 30, 2022, with a decision approving the registration having been made on August 16, 2022.

76.    As the owner of the Exclusive Software, Plaintiff enjoys the exclusive right to (1) reproduce the Exclusive Software, (2) prepare derivative works based upon the Exclusive Software, (3) distribute copies of the Exclusive Software, and (4) display and use the Exclusive Software. *See* 17 U.S.C. § 106.

77.    At no time did Plaintiff ever authorize Plokhykh to reproduce, distribute, prepare derivative works, or publicly display the Exclusive Software or any portion thereof.

78.    Nevertheless, Plokhykh has sold and continues to sell unauthorized and unlicensed copies of the Exclusive Software despite having no permission to do so.

79.    Upon information and belief, Plokhykh has infringed and continues to infringe on Plaintiff's copyright for the Exclusive Software by unlawfully reproducing and distributing substantially identical copies of the Exclusive Software in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

80.    Upon information and belief, Plokhykh, or someone acting on his behalf, may have modified portions of the Exclusive Software prior to distributing to third parties and as a result has infringed and is infringing on Plaintiff's copyright for the Exclusive Software by unlawfully reproducing and distributing derivative works of the Exclusive Software in violation of the United States Copyright Act, 17 U.S.C. §§ 106 *et seq*.  The natural and foreseeable result of Plokhykh's wrongful conduct has been to deprive Plaintiff of its exclusive right to use and enjoy the benefits of the Exclusive Software and to provide those benefits to Plaintiff's competitors, resulting in injury to Plaintiff's relationship with present and prospective customers.

81.    Plokhykh's unauthorized use and sale of the Exclusive Software has also deprived and continues to deprive Plaintiff of the opportunity to expand its goodwill.

82.     Plokhykh's infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiff's copyright, and in conscious disregard of Plaintiff's exclusive rights in the Exclusive Software.

83.     Plokhykh's deliberate infringement of Plaintiff's copyrights has greatly and irreparably damaged Plaintiff, and Plokhykh will continue to damage Plaintiff greatly and irreparably unless enjoined by this Court.

84.     In the absence of injunctive relief, Plaintiff will have no adequate remedy at law.

85.     Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502.

86.     By reason of the Plokhykh's wrongful, willful, and malicious infringement on Plaintiff's copyrights, Dumbo is entitled to injunctive relief to prevent Plokhykh, along with his employees, agents, and representatives, from continuing to infringe on Dumbo's copyright in the Exclusive Software in accordance with 17 U.S.C. § 502. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, including the gains, profits and advantages unlawfully received by Plokhykh as a result of copyright infringement, along with attorney's fees and costs.

## **AS AND FOR A SECOND CAUSE OF ACTION**

### **(Copyright Infringement—Against Simply, Marcali, POC and Popovic)**

87.     Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

88.     At no time has Plaintiff ever granted a license authorizing Simply, Marcali, POC and/or Popovic's use and enjoyment of the benefits of the Exclusive Software.

89.     At no time did Plaintiff ever grant a license authorizing POC, Popovic, Simply and Marcali to reproduce, distribute, prepare derivative works, or publicly display the Exclusive Software or any portion thereof.

90.     Nevertheless, POC, Popovic, Simply and Marcali have either reproduced and used the Exclusive Software directly or have created a derivative work based on the Exclusive Software that is substantially similar to, if not virtually identical with, Plaintiff's original Exclusive Software.

91.     POC, Popovic, Simply and Marcali have in the past and continue to facilitate, induce and/or contribute to the unauthorized acts of others, namely Plokhykh, in circumventing Plaintiff's software security.  POC, Popovic, Simply and Marcali are, therefore, liable as copyright infringers or contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

92.     Upon information and belief, in or around July or August 2022, Marcali sold Simply and/or all of Simply's assets to POC.  POC now continues to operate Simply's business using the Exclusive Software in violation of Plaintiff's rights and interests in the Exclusive Software.

93.     Upon information and belief, POC, Popovic, Simply and Marcali have infringed and continue to infringe on Plaintiff's copyright for the Exclusive Software by unlawfully reproducing and distributing substantially identical copies of the Exclusive Software in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

94.     Upon information and belief, in modifying and customizing the Exclusive Software, POC, Popovic, Simply and Marcali have infringed and are infringing on Plaintiff's copyright for the Exclusive Software by unlawfully reproducing and distributing derivative works of the Exclusive Software in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

95.     Upon information and belief, POC, Popovic, Simply and Marcali, are continuing to maintain and modify the Exclusive Software.  In connection with each update of the Exclusive

Software, a new derivative work is created by POC, Popovic, Simply and Marcali in violation of the United States Copyright Act, 17 U.S.C. §§ 106 et seq.

96.    POC, Popovic, Simply and Marcali's infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiff's copyright, and in conscious disregard of Plaintiff's exclusive rights in the Exclusive Software.

97.    In the alternative, POC, Popovic, Simply and Marcali encouraged Plokhykh to unlawfully access the Exclusive Software and provide copies of the Exclusive Software to POC, Popovic, Simply and Marcali for their use and benefit, making POC, Popovic, Simply and Marcali liable as both infringers and contributory infringers in violation of the Copyright Act, 17 U.S.C. §§ 101, et. seq.

98.    POC, Popovic, Simply and Marcali's willful and deliberate infringement of Plaintiff's copyrights has greatly and irreparably damaged Plaintiff, and POC, Popovic, Simply and Marcali will continue to damage Plaintiff greatly and irreparably unless enjoined by this Court.

99.    The natural and foreseeable result of POC, Popovic, Simply and Marcali's wrongful conduct has been to deprive Plaintiff of its exclusive right to use and enjoy the benefits of the Exclusive Software and to provide those benefits to Plaintiff's competitors, resulting in injury to Plaintiff's relationship with present and prospective customers.

100.    POC, Popovic, Simply and Marcali's unauthorized use and sale of the Exclusive Software has also deprived and continues to deprive Plaintiff of the opportunity to expand its good will.

101.    In the absence of injunctive relief, Plaintiff will have no adequate remedy at law.

102.    POC, Popovic, Simply and Marcali are also jointly and severally liable for the acts of infringement and contributory infringement by Plokhykh.

103.    Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502.

104.    By reason of POC, Popovic, Simply and Marcali's unlawful conduct as alleged above, Plaintiff has been substantially injured and is entitled to damages, including all profits earned by POC, Popovic, Simply and Marcali that are attributable to POC, Popovic, Simply and Marcali's infringement, which is presently indeterminate, along with attorney's fees and costs.

## AS AND FOR THE THIRD CAUSE OF ACTION

**(Misappropriation of Trade Secrets Under the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.)—Against Plokhykh, POC and Popovic)**

105.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

106.    Dumbo owns and possesses confidential and proprietary trade secrets which are embodied in the Exclusive Software, including numerous unique and novel features implemented in a manner not generally known in the industry previously that gave Dumbo an advantage over its competition including the specific arrangement and integration of the following unique and novel features:

    a.    Communication tools that enable Dumbo to communicate with both customers and employees using Dumbo's website, obviating the need for paper printouts that were previously provided to employees and customers;

    a.    Integrated scheduling, dispatch, and crew assignment tools, including advanced graphical user interface with status boards;

    b.    Lead aggregation tools which group leads by specified parameters and filters;

    c.    Digital bills of lading available for all shipments and deliveries, eliminating reliance on paper originals and copies;

    d.    Customer Relationship Management (CRM) features that provide Dumbo the ability to follow up with customers, keep them up to date on special offers and increase lead generation by creating an automated list of

customers and potential customers based on user interaction with the website;

e. Seamless integration of data related to storage and moving services;

f. Data aggregation features, including the ability of Dumbo and its customers to track the status of any move in real time using an easy-to-follow map and graphical interface;

g. An easy and seamless online payment system that enables customers to make payments online, with Dumbo employees receiving real time notice of the clearance of customer payments; and

h. Integrated and automated compensation calculation and payment processing for contractors and commissioned employees.

107. Dumbo took reasonable efforts to protect its trade secrets, including, but not limited to, obtaining confidentiality and non-disclosure agreements from anyone with knowledge of or access to the Exclusive Software (including IT Dev UA, IT Dev NY, and all of the defendants in this action) and requiring IT Dev UA to provide secure control over the source code for the Exclusive Software.

108. In connection with the filing of the copyright application for the Exclusive Software, Dumbo protected the trade secrets embodied in the source code by limiting the deposit to the first twenty-five (25) pages and last twenty-five (25) pages of the source code.

109. Upon information and belief, Plokhykh is not a programmer, does not write computer code and played no role in the actual creation of the source code for Exclusive Software.

110. Pursuant to the Plokhykh NDA, Plokhykh was obligated not to communicate Dumbo's Confidential Information and trade secrets to third parties, including the Exclusive Software and the trade secrets embodied therein.

111. Plokhykh gained access to the Exclusive Software without Dumbo's authorization or consent through his business relationships with IT Dev NY and/or IT Dev UA.

112.    Popovic had been employed by or otherwise engaged by Dumbo as independent contractor between 2013 and 2018.

113.    During the time that Popovic was doing business with Dumbo, Popovic developed a business relationship with Plokhykh.

114.     In or around 2017, Defendant Popovic formed POC, which is a moving and storage company that worked as an independent contractor for Dumbo between 2017 through 2018.  In 2017 and 2018, both Popovic and POC executed confidentiality and non-disclosure agreements in favor of Dumbo.

115.    POC subsequently terminated its relationship Dumbo and is now a direct competitor of Dumbo.

116.    POC and Popovic were aware of the features and benefits provided by the Exclusive Software at a high level through Popovic's experience working for Dumbo.  At no time, however, did Dumbo ever disclose or provide access to the full features of the Exclusive Software or the source code of the Exclusive Software to POC and/or Popovic.  In short, Dumbo did not disclose or authorize the disclosure of trade secrets embodied in the Exclusive Software to POC and/or Popovic.

117.    Upon information and belief, POC and Popovic believed the Exclusive Software would be of great commercial benefit to POC and would give POC a competitive advantage over Dumbo and other moving companies.

118.    Based on their history as contractors with a long-term business relationship with Dumbo, POC and Popovic were also aware the Exclusive Software was solely and exclusively owned by Dumbo.

119.    Upon information and belief, in or about 2018, Plokhykh made an unauthorized copy of the Exclusive Software and source code without Dumbo's knowledge or consent.

120.    Upon information and belief, Plokhykh, either individually or through an entity he owns or controls, and in violation of his obligations of confidentiality to Dumbo, sold an unauthorize and unlicensed copy of the Exclusive Software and source code to POC and/or Popovic in or around 2018 without Dumbo's knowledge or consent.

121.    Upon information and belief, in or around 2018, Popovic and/or POC actively encouraged Plokhykh to make an unauthorized copy of the Exclusive Software and source and further agreed to acquire the Exclusive Software and source code from Plokhykh, knowing: (a) Plokhykh was an employee of Dumbo; (b) Plokhykh was subject to a confidentiality and non-disclosure agreement that prohibits him from disclosing Dumbo's confidential information and trade secrets; and (c) that Plokhykh was not authorized to sell, transfer, or license a copy of the Exclusive Software to Popovic or POC.

122.    After illegally acquiring the unauthorized copy of the Exclusive Software, Popovic and/or POC incorporated all the unique features of the Exclusive Software into POC's website and business operations.  As a result of its use of the Exclusive Software, POC's business grew exponentially to Dumbo's detriment.

123.    By reason of Plokhykh, POC and Popovic's wrongful, willful, and malicious conduct, Dumbo is entitled to injunctive relief to prevent Plokhykh, POC and Popovic from disclosing the features and operation of the Exclusive Software or using the Exclusive Software they misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense. Dumbo is also entitled to compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000, punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and further relief as the Court believes is just and proper.

## AS AND FOR THE FOURTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets Under the Defense of Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.)—Against Plokhykh, Simply and Marcali)**

124.    Plaintiff incorporates the preceding allegations of this Complaint as if set forth at length herein.

125.    Upon information and belief, in or about 2018, Plokhykh, without Dumbo's knowledge or consent, and in violation of his obligations of confidentiality to Dumbo, sold an unauthorized copy of the Exclusive Software embodying Dumbo's trade secrets to Simply and/or Marcali.

126.    Between 2012 and 2017, Marcali had been employed by or otherwise engaged by Dumbo as independent contractor.

127.    As a result of their mutual connection to Dumbo, Marcali developed a business relationship with Plokhykh.

128.    Upon information and belief, upon leaving Dumbo in 2017, Marcali started Simply, which was Marcali's own moving and storage company.

129.    Marcali and/or Simply were subject to a confidentiality and non-disclosure agreement that barred them from using any of Dumbo's confidential information or trade secrets they learned of through their business relationship with Dumbo.

130.    Dumbo did not provide Simply and/or Marcali with access to the full features of the Exclusive Software and never disclosed or authorized the disclosure of the source code or underlying trade secrets embodied in the Exclusive Software to Simply or Marcali.

131.    Based on their relationship with Dumbo, Simply and Marcali were aware of the benefits provided by the Exclusive Software to Dumbo at a high level and believed the Exclusive Software would be of great commercial benefit to Simply and would give Simply a competitive advantage over Dumbo.

132.    Marcali and Simply were aware of the fact Plokhykh was a full-time employee of Dumbo and owed a fiduciary duty to protect Dumbo's trade secrets and confidential information pursuant to a confidentiality and non-disclosure agreement.

133.    Simply and Marcali were also aware the Exclusive Software was solely and exclusively owned by Dumbo.

134.    Upon information and belief, in or around 2018, Marcali and/or Simply actively encouraged Plokhykh to make an unauthorized copy of the Exclusive Software and source code and further agreed to acquire the Exclusive Software and source code from Plokhykh, knowing: (a) Plokhykh was an employee of Dumbo; (b) Plokhykh was subject to a confidentiality and non-disclosure agreement that prohibits him from disclosing Dumbo's confidential information and trade secrets; and (c) that Plokhykh was not authorized to sell, transfer, or license a copy of the Exclusive Software to Marcali or Simply.

135.    Upon information and belief, in or about 2018, after being induced by the promise of compensation offered by Marcali or Simply, Plokhykh made an unauthorized copy of the Exclusive Software then sold the unauthorize and unlicensed copy of the Exclusive Software to Simply and/or Marcali without Dumbo's knowledge or consent.

136.    After illegally acquiring the Exclusive Software, Marcali and/or Simply incorporated all the unique features of the Exclusive Software into Simply's website and business operations.  As a result of its use of the Exclusive Software, Simply's business grew exponentially.

137.    By reason of their wrongful, willful, and malicious conduct, Dumbo is entitled to preliminary and permanent injunctive relief to prevent Plokhykh, Marcali and Simply from using the Exclusive Software they misappropriated from Dumbo to benefit themselves and any other third parties at Dumbo's expense.  Dumbo is also entitled to compensatory damages against Plokhykh, Marcali and Simply in an amount to be determined at trial, but in no case less than $20,000,000,

punitive damages in an amount to be determined at trial, attorneys' fees and costs and such other and

further relief as the Court believes is just and proper.

## RESERVATION OF RIGHTS

138.    Plaintiff hereby specifically reserves the right to bring any and all other causes of

action that it may maintain against any and all of the named Defendants and any other parties,

including, without limitation, causes arising out of the same transaction(s) set forth herein, to the

extent discovery in this action or further investigation reveals such further causes of action.

## DEMAND FOR A JURY TRIAL

139.    Plaintiff hereby demands a trial by jury in this proceeding.

**WHEREFORE**, Dumbo Moving and Storage Inc. prays for judgment granting the relief set

forth below against Defendants Piece of Cake Moving & Storage LLC, Simply Moving LLC, Simply

Moving & Storage LLC, Vojin Popovic, Stefan Marcali and Volodymyr Plokhykh:

a. With respect to Plaintiff's First Cause of Action, as a result of Defendant Plokhykh's infringement of copyrights owned by Plaintiff in violation of the Copyright Act, 17 U.S.C. § 101 et seq., Plaintiff is entitled to a judgment: (i) awarding Plaintiff a permanent injunctive preventing Plokhykh, along with his employees, agents and representatives, from continuing to infringement or contributory infringement on Dumbo's copyright in the Exclusive Software in accordance with 17 U.S.C. § 502; (ii) awarding Plaintiff compensatory damages against Defendant Plokhykh for his infringement and contributory infringement on Plaintiff's copyrights in an amount to be determined at trial, including the gains, profits and advantages unlawfully received by Defendant Plokhykh; and (iii) awarding Plaintiff punitive damages in an amount to be determined at trial;

b. With respect to Plaintiff's Second Cause of Action, as a result of Defendants POC, Popovic, Simply Moving, Simply Storage and Marcali's infringement or contributory infringement on the copyrights owned by Plaintiff in violation of the Copyright Act, 17 U.S.C. § 101 et seq., Plaintiff is entitled to a judgment: (i) awarding Plaintiff a permanent injunction precluding POC, Popovic, Simply Moving, Simply Storage and Marcali's, along with their employees, agents and representatives, from continuing to infringe on Dumbo's copyright in the Exclusive Software in accordance with 17 U.S.C. § 502; (ii) awarding Plaintiff compensatory damages in an amount to be determined at trial, including the gains, profits and advantages unlawfully received by Defendants POC, Popovic, Simply Moving, Simply Storage and Marcali as a result of copyright infringement; and (iii) awarding Plaintiff punitive damages in an amount to be

determined at trial;

c.  With respect to Plaintiff's Third Cause of Action, as a result of the Defendants Plokhykh, POC and Popovic's misappropriation of trade secrets in violation of the Defense of Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.), Plaintiff is entitled to a judgment: (i) awarding Plaintiff a permanent injunction against Defendants Plokhykh, POC and Popovic that precludes them from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense; (ii) awarding Plaintiff compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000; and (iii) awarding Plaintiff punitive damages in an amount to be determined at trial;

d.  With respect to Plaintiff's Fourth Cause of Action, as a result of the Defendants Plokhykh, Simply Moving, Simply Storage and Marcali's misappropriation of trade secrets in violation of the Defense of Trade Secrets Act of 2016 (18 U.S.C. § 1836 et seq.), Plaintiff is entitled to judgment: (i) permanently enjoining Defendants Plokhykh, Simply Moving, Simply Storage and Marcali from using the Exclusive Software they misappropriated from Plaintiff to benefit themselves and any other third parties at Plaintiff's expense; (ii) awarding Plaintiff compensatory damages in an amount to be determined at trial, but in no case less than $20,000,000; and (iii) awarding Plaintiff punitive damages in an amount to be determined at trial;

e.  for attorneys' fees costs and expenses;

f.  for interest on any damages awarded; and

g.  for such other and further relief as this Court deems just and proper.


Dated:  Uniondale, New York
        September 5, 2023


                                        **TURMAN LEGAL SOLUTIONS PLLC**
                                        *Counsel for Plaintiff Dumbo Moving &*
                                        *Storage Inc.*

                                        *Stephen Turman*

                        By:             Stephen E. Turman
                                        626 RXR Plaza, 6th Floor
                                        Uniondale, New York 11556
                                        (516) 266-6101
                                        sturman@turmanlegal.com

25

*-and-*

**ACKnowledge IP P.C.**
Paul D. Ackerman, Esq.
6800 Jericho Turnpike
Suite 120W
Syosset, NY 11791
paul@acknowledgeip.com
(631) 970-7060

*Co-Counsel for Plaintiff Dumbo Moving &
Storage, Inc.*