UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUMBO MOVING & STORAGE, INC., | Case No. 22-CV-05138 |
| Plaintiff, | |
| v. | |
| PIECE OF CAKE MOVING & STORAGE LLC, SIMPLY MOVING LLC, SIMPLY MOVING & STORAGE LLC, VOJIN POPOVIC, STEFAN MARCALI and VOLODYMYR PLOKHYKH, | |
| Defendants. | |

**STIPULATED PROTOCOL AND ORDER FOR DISCOVERY OF**

**ELECTRONICALLY STORED INFORMATION**

In order to simplify and facilitate the production of Electronically Stored Information ("ESI") and other documents, the Parties stipulate and agree to follow the protocol herein:

**A.   PURPOSE**

The parties to the above-captioned case jointly submit this Protocol for Discovery of Electronically Stored Information (herein after, the "Protocol") as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules, to govern the production of ESI and hard copy documents in this Litigation. All disclosures and productions made pursuant to this Protocol are subject to any confidentiality Protective Order and all other Orders entered in this Litigation.

**B.   SCOPE**

This Protocol governs the discovery of all types of responsive documents, whether maintained as ESI or in hard copy (collectively, "Documents"), both of which shall be produced electronically in this Litigation. Nothing herein shall alter the parties' respective responsibilities to comply with the applicable Federal Rules of Civil Procedure and Local Rules of Court. Nothing herein establishes any agreement regarding the scope of the discovery in the Litigation, or as to the relevance or admissibility of any Documents. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

**C.   DEFINITIONS**

1. "Litigation" means the case captioned, Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC et al, Case No. 22-CV-05138, S.D.N. Y.

2. "Electronically Stored Information" or "ESI" carries its broadest meaning consistent with Fed. R. Civ. P. 34(a)(1)(A).

3. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34(a)(1)(A) and the definitions of "writings," "recordings," and "photographs" in Fed. R. Evid. 1001, and thus includes both ESI and Paper Discovery (defined below).

4. "Paper Discovery" means any Document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34(a)(1)(A) that is not ESI.

5. "Email" or "electronic mail" means an electronic means for communicating written information through structured data applications (i.e., email client software) that can send, store, process, and receive information, regardless of whether such email is stored within the email client software, or within a hard drive or network location.

6. "Format" means the internal structure of an electronic file which defines the way it is stored and accessed.

7. "Native Format" means the Format of ESI in the application in which such ESI was originally created.

8. "Party" or "Parties" means Plaintiff and Defendants (collectively).

2

      9.      "Producing Party" means a Party that produces Documents.

      10.     "Receiving Party" means a Party to whom Documents are produced.

      11.     "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

      12.     "JPEG" refers to the Joint Photographic Experts Group's file format for storing graphic images using a compression algorithm.

      13.     "Production Bates Number" means the unique serial number attached to every page of a document produced.

### D. PRESERVATION

The Parties have discussed their preservation obligations and will continue to meet and confer to ensure that preservation of potentially relevant Documents will be reasonable and proportionate. To reduce the costs and burdens of preservation and so that reasonable and proportional steps are taken to ensure that relevant Documents are preserved, the Parties agree that:

(a)     Except for any ESI of Plaintiff pertaining to Defendant Stephen Marcali's employment by Plaintiff for which the preservation date shall be January 1, 2011 and thereafter, only potentially relevant ESI created or received after January 1, 2015 will be preserved throughout this Litigation.

(b)     The Parties will meet and confer to identify data sources and custodians from where ESI will be preserved and searched for relevant Documents to review and produce.

(c)     The Parties will meet and confer to identify any data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) where ESI from these sources will be preserved but not searched, reviewed, or produced.

(d)     The Parties will meet and confer to identify data sources that could contain relevant information but under the proportionality factors, should not be preserved.

(e)     Among the sources of data the Parties agree are not reasonably accessible or are unduly burdensome to preserve, the Parties agree not to preserve the following: versions of documents automatically saved by computer programs in cache files, temporary files, temporary data stored in a computer's random access memory or RA, or similarly inaccessible locations.

(f)     As a result of investigation, the Parties may identify additional data sources that may contain relevant data potentially subject to preservation pursuant to the above provisions. The Parties will meet and confer as to whether preserving such ESI is warranted.

(g)     Notwithstanding anything to the contrary herein, the following Documents are not discoverable in the Litigation except upon a showing of good cause as may be determined by the Court: Information contained on back-up tapes or other long-term, archival storage media that were created strictly for use as a disaster recover mechanism. If a Party requests that such long-term storage media be searched for a Document that is not cumulative of ESI stored in active

media or that is not available as Paper Discovery, the Parties agree to meet and confer in good faith regarding the request.

**E.      LIMITATION OF ESI**

The Parties agree to the following limitations of ESI:

(a)     Identification of Custodians of ESI: The Parties will meet and confer to identify the custodians from whom ESI will be searched and reviewed for Documents that may be responsive to a document request.

(b)     Date Range: The Parties agree that unless otherwise specified in a specific request for production, the relevant time-period for ESI production shall be on or after January 1, 2015.

(c)     Use of Search Terms and/or Predictive Coding: The Producing Party shall disclose to the Receiving Party all search terms and/or predictive coding that was used, if any, to narrow the universe of ESI to review, search and produce.  The Parties agree to meet and confer as to any search terms and/or predictive coding to be used to search, review, and produce ESI.

**F.      PRODUCTION FORMAT**

1.      <u>GenAI</u>. All productions made on behalf of any Party should not be entered through any generative artificial intelligence ("GenAI") tools, including but not limited to ChatGPT or any other tool that generates new content, unless otherwise agreed upon by the Parties in writing in advance.  No GenAI tool that stores data outside of the secure control of any Party or any Party's counsel may be used unless otherwise agreed upon by the Parties in writing in advance. No GenAI tool that allow for produced data to be publicly available is permissible. For sake of clarity, this provision does not preclude use of Relativity or comparable litigation support software which is in the control of any Party or any Party's counsel.

2.      <u>ESI Production Format</u>: The Parties shall produce each document in single-page Group IV Tagged Image File Format ("TIFF") format.  TIFF files shall be single-page and shall be named with the first unique Production Bates Number of the document, followed by the extension ".TIF".  An appropriate load file to be identified by each Party, such as a Concordance or Relativity load file, shall be provided to indicate the location and unitization of the TIFF files. Included in the load file would be the document's custodian, document and attachment boundaries, folder groupings, box number, and any other physical groupings. The load file would also include the source for the document.  In addition, the technical specification listed in Exhibit A shall apply to all ESI and other Documents produced, as applicable.

3.      <u>Metadata</u>: The parties shall exercise reasonable, good faith efforts to maintain all preserved and collected ESI in a manner that does not materially alter or modify the file or the metadata.   See Exhibit A for the applicable metadata fields.

4.       <u>Production of Paper Discovery Documents</u>: Documents originating in Paper Discovery format will be scanned and converted to electronic format and produced as Tagged Image File Format ("TIFF") or as Joint Photographic Experts Group ("JPG"), in accordance with the

specifications contained herein. Color documents will be produced in JPG format. Reasonable efforts shall be used by the Producing Party to provide coding information that is readily available from Paper Discovery documents that are scanned and converted to static images, and, at minimum, custodian information, if known, regarding such Paper Discovery will be provided. The parties shall make their reasonable, best efforts to logically unitize Paper Discovery documents prior to production (e.g., distinct documents shall not be merged into a single document, and distinct documents shall not be further split into multiple documents).  The Parties shall make their reasonable, best efforts to logically unitize distinct documents within an organized group structure, such as folders, clipped or stapled bundles, and binders. Each group shall be maintained as a family relationship as specified in this Protocol. Where a document or organized group structure has a cover, spine, "post-it note," tab, divider or any other identifying label, the information from such shall be scanned and produced as the first page of the document or document grouping. Notes affixed to documents shall be scanned in with both with the note affixed and removed so that all text is visible. A Party need not produce a non-electronic duplicate of any Paper Discovery produced in electronic form, except that upon a reasonable request by the Receiving Party and a showing of good cause (for example, problems with legibility or formatting), the Producing Party must produce the Paper Discovery in its original format at a mutually agreeable time and place.

5.	<u>Appearance and Content</u>:  Subject to any necessary redaction, to the extent possible, each Document's image file shall contain the same information and same physical representation as the Document did in its original format, whether paper or electronic.  ESI shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

6.	<u>Document Unitization</u>:  If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.  If unitization cannot be maintained, the original unitization shall be documented in a load file or otherwise electronically tracked. All document family groups, i.e. email attachments (including modern attachments), embedded files, etc., are produced together and children files should follow parent files sequentially in the Bates numbering. All members of the family shall have the same group identifier (which means it repeats for all records in the group); this identifier is populated in the PRODBEGATT field.

7.	<u>Color</u>:  Documents containing color need not be produced in color unless (a) color is necessary to interpret the meaning or content of the Document (e.g. when different authors use different colors in a Document or email) or (b) the Receiving Party makes a reasonable request for the production of ESI in Native Format or for production of Paper Discovery in its original format, as applicable.

8.	<u>Document Numbering</u>:  Each page of a document produced (whether in paper or image format) shall have a sequential, legible, unique alphanumeric identifier ("Document Number") not less than six (6) digits electronically endorsed onto the image at a place on the document that does not obscure, conceal or interfere with any information originally appearing on the

document.  The Document Number for each Document shall be unique and created so as to identify the Producing Party and the Document Number (for example, "BETA0000000").

9.      Production of ESI in Native Format:  Excel or similar electronic/digital spreadsheets, multimedia audio or visual recordings, PowerPoint or similar digital presentations, shall be produced in native format.   In addition, wherever production of a Document in a commercial image file format is impracticable or the Producing Party must produce such Document in Native Format consistent with the Federal Rules of Civil Procedure.  The Producing Party shall collect and produce Documents in Native Format in a manner that preserves the integrity of the files.  In all other instances, after initial production of ESI in TIFF, a Party wanting to receive a Native Format copy of a Document may make a reasonable request.  No Document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the Document before its collection. Native files shall be named with the corresponding Production Bates Number.  A link to the native files shall be provided in a Native Path field within the load file.  For the sake of clarity, this provision does not allow the production of all ESI in Native Format. The production of source code and related computer program data is addressed in a separate protective order.

10.     Production Media:  The Producing Party shall produce images of Documents and load files on in electronic form which can be easily accessed and download by the Receiving Party.

11.     Original Documents:  Nothing in this Protocol shall eliminate or alter any Party's obligation to retain Native Format copies of all ESI produced in the Litigation and original paper copies for all Paper Discovery produced in the Litigation.

12.     Third-Party Software:  Each Party is individually responsible for obtaining any third party software necessary to render and/or view any Documents produced in the Litigation in accordance with this Protocol.  The Producing Party shall reasonably cooperate to facilitate access and review of the Documents by the Receiving Party.

13.      Removal of Duplicates:  The Producing Party must take reasonable steps to remove all duplicative Documents using a global de-duplication process across all custodians prior to production.

14.     ESI of Limited Accessibility:  If a Producing Party contends that any responsive ESI, excluding back-up tapes or other long-term storage media that were created strictly for use as a disaster recover mechanism, is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, an estimate of the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (for example, the type of system used to store the ESI), and where such ESI is kept.  The Parties shall negotiate in good faith concerning the production of any such ESI.  If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court, who shall determine whether

such ESI needs to be produced and to what extent the costs of such production shall be borne by the Producing or Receiving Parties.

15.     Message/Text  Documents: iMessages, Short Message Service files or instant messenger services such as but not limited to: Slack, Signal, Discord, Microsoft Teams, Telegram, Text messages (MMS, SMS, iMessage, Whatsapp), Google Chat, Bloomberg Chat, Instagram, should be produced with the entire conversation and the family group as one file or produced no smaller than by day (24-hour period) ensuring that the entire conversation thread is maintained in a family group or by providing the Conversation Thread ID as applicable

16.     Time Zone.  ESI should be produced wherever possible to the specific time zone of UTC (Coordinated Universal Time).

**G.     ADDITIONAL ISSUES**

1.      English Language:  If any Document exists in more than one language, the Document shall be produced in English, if available.  If no English version of a Document is available, the Producing Party does not have an obligation to produce an English translation of that Document.

2.      Protective Order:  The terms of any Stipulated Protective Order filed with the Court also govern all productions made pursuant to this Protocol.

3.      Privilege:  Pursuant to Federal Rule of Evidence 502(d), applicable law and the protective order in this Litigation, the inadvertent production of a privileged or work product protected ESI is not a waiver of the applicable privilege if appropriate measures are taken upon discovery of such inadvertent production to "claw back" the ESI or Document. Nothing in this Protocol shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents.

4.      Meet and Confer: The Parties shall meet and confer in good faith to resolve any disputes that arise under this Protocol.  If the Parties cannot reach agreement on a disputed matter, they shall submit the matter to the Court.

**Exhibit A – Technical Production Specifications**

**Delivery Format**

- Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format.

- All image files must have a unique file name. There should be no gaps in the image set.

- The number of TIFF files per folder should not exceed 500 files.

- Some document types will not be imaged for production unless redactions are applied, i.e. spreadsheets those documents should be produced in native format with a slip-sheet included with the image collection indicating, "Document Produced in Native Format", titled after the PRODBEG of the native files, there should be no gaps in the image collection.

- For production with native files, a NATIVELINK field must be included to provide the file path and name of the native file on the produced storage media. Native file documents must be named per the first bates number. The full path of the native file must be provided in the .DAT file for the NATIVELINK field. The number of native files per folder should not exceed 500 files.

- Each page of every document should be endorsed with the bates number on the lower right corner of each page of the document

- If documents require an additional endorsement, the additional endorsement should be placed in the lower right corner of each page of the document

- The export will include the following load files: DAT and OPT files

    o The data file (.DAT) contains all of the fielded information that will be loaded into the Relativity® database. The first line of the .DAT file must be a header record identifying the field names. The

.DAT file must use the following Concordance® default delimiters:

    - Comma ASCII character 20

    - Quote þ ASCII character 254

    - Newline ® ASCII character 174

    o Date fields should be provided in the Date/Time format, i.e. 05/28/2016 7:11 AM. Dates must be in a valid format. For example, 01/00/2000 or 00/00/0000 are **not** valid dates.

    o The image cross-reference file is needed to link the images to the database. It is a comma- delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

> Text must be produced as separate document-level text files, **not** as fields within the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. The TEXTPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the

ProdBeg. <u>DO NOT include the text in the .DAT file</u>.

> The structural and metadata fields that will be produced in the DAT file are indicated below:

**PRODBEG**
**PRODEND**
**PRODBEGATT** (BegAtt and EndAtt fields must be two separate fields.)
**PRODENDATT (**BegAtt and EndAtt fields must be two separate fields.)
**CUSTODIAN**
**ALL CUSTODIANS**
**DOCTYPE**
**PARENT DATE/TIME** – this field is an aggregated date field which is harmonized **and carried down through all attachments and family members.**
**FROM**
**TO**
**PARTICIPANTS –** Populated with all participants (active and non-active) from any short messages, i.e. text, or short messages service files
**CC**
**BCC**
**SUBJECT**
**SENT DATE/TIME**
**RECEIVED DATE/TIME**
**CREATED DATE/TIME**
**LAST MODIFIED DATE/TIME**
**BEGIN DATE –** Populated for any short messages produced
**END DATE** – Populated for any short messages produced
**CHAT TYPE –** Populated with the type of MMS, SMS message collected, i.e. text message, iMessage, SLACK, Telegram, WhatsApp
**TIMEZONE**
**FILENAME**
**ORIGINAL FILE PATH**
**FILE EXT**
**AUTHOR**
**FILESIZE**
**MD5HASH**
**MESSAGEID**
**ConversationThreadID**
**PROD_VOLUME**

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: November 29, 2023

Attorneys for Plaintiff, Dumbo Moving & Storage, Inc.

By: _____*/s/ Stephen E. Turman*_____
Stephen E. Turman
Turman Legal Solutions
626 RXR Plaza, 6th Floor
Uniondale, New York 11556
(516) 266-6101
sturman@turmanlegal.com

Attorneys for Defendants, Piece of Cake Moving & Storage LLC, Simply Moving LLC, Simply Moving & Storage LLC, Vojin Popovic, and Stefan Marcali

By: _____*/s/ Fred H. Perkins*_____
Fred H. Perkins
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
212-736-8600
fhperkins@morrisoncohen.com

Attorneys for Defendant Volodymyr Plokhykh

By: _____*/s/ Wing K. Chiu*_____
Oleg A. Mestechkin
Wing K. Chiu, Esq.
MESTECHKIN LAW GROUP P.C.
1733 Sheepshead Bay Road, Suite 29
Brooklyn, NY 11235
Tel. (212) 256-1113
Fax. (646) 365-2069
om@lawmlg.com
wkc@lawmlg.com

IT IS SO ORDERED.

DATED: November 30, 2023
New York, New York

_____
Hon. Edgardo Ramos
United States District Judge

#12567429v6\028447\0003