UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

DUMBO MOVING & STORAGE, INC.,

                Plaintiff,

– against –

PIECE OF CAKE MOVING & STORAGE LLC, SIMPLY MOVING LLC, SIMPLY MOVING & STORAGE LLC, VOJIN POPOVIC, STEFAN MARCALI, and VOLODYMYR PLOKHYKH,

                Defendants.

**OPINION & ORDER**

22 Civ. 05138 (ER)

RAMOS, D.J.:

      In this action, Dumbo Moving & Storage, Inc., alleges that three other moving companies—Piece of Cake Moving & Storage LLC, Simply Moving LLC ("Simply Moving"), and Simply Moving & Storage LLC ("Simply Storage")—and several of their employees or former employees improperly reproduced and misappropriated Dumbo's exclusive software. Dumbo has moved to disqualify attorney Steven Rubin and the law firm Morrison Cohen LLP as counsel for Defendants.[1] For the reasons set forth below, the motion to disqualify is DENIED.

## I.   BACKGROUND

      Familiarity with the prior proceedings in this case is presumed. *See generally Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC*, No. 22 Civ. 5138 (ER), 2023 WL 5352477, at *1–4 (S.D.N.Y. Aug. 21, 2023). Dumbo is one of the largest moving companies in the tri-state area, and it also provides long-distance moving services throughout the United States. *Id.* at *1. Dumbo alleges that the Defendants

---

[1] The individual defendants are Vojin Popovic, Stefan Marcali, and Volodymyr Plokhykh. Popovic is the owner of Piece of Cake. Doc. 66 ¶ 6. Marcali is the former owner of Simply Moving and Simply Storage. *Id.* ¶ 8. Plokhykh is a former employee of Dumbo. *Id.* ¶ 17. Morrison Cohen currently represents all of the defendants except Plokhykh.

misappropriated its proprietary Moving Company Automated Central Management System software and related trade secrets. Doc. 66.

This action was filed in June 2022. Doc. 1. Attorney Steven Rubin served as counsel for Dumbo in connection with this litigation from May 2022 to February 2023. Doc. 98 ¶ 2. In that capacity, Rubin participated in brainstorming sessions "during which Dumbo formulated a strategy for litigating this case." *Id.* ¶ 3. Specifically, Rubin discussed Dumbo's litigation strategy with Stephen E. Turman—who was also retained as counsel for Dumbo and continues to serve in that capacity—on multiple occasions from May 2022 through July 2022, including commenting on a draft of Dumbo's complaint. *Id.* ¶¶ 4–8. Rubin also prepared the copyright registration for Dumbo's software between July and August 2022, and he provided a written response to the copyright examiner as part of that process. *Id.* ¶¶ 9, 12–13. Rubin had full access to the litigation file and communicated directly with Dumbo. *Id.* ¶ 10.

In addition, Rubin collaborated with Turman to prepare Dumbo's first amended complaint, which was filed in September 2022. *Id.* ¶ 14. In November 2022, Rubin assisted Turman during settlement negotiations with former counsel for defendant Marcali. *Id.* ¶ 16. Rubin was copied on emails from Turman to Dumbo that included legal analysis and advice. *Id.* ¶ 20. While Rubin never filed a notice of appearance in this matter, he was also copied on several emails exchanged by Turman and Fred Perkins—a Morrison Cohen attorney representing Defendants—between October 2022 and January 2023. *Id.* ¶ 21. Dumbo asserts that Rubin still has his Dumbo file. *Id.* ¶ 26.

In June 2023, Rubin joined Morrison Cohen as Senior Counsel in its Technology, Data & IP Practice. *Id.* ¶ 23. Morrison Cohen has represented Piece of Cake and Popovic in this matter since March 2022, Doc. 102 ¶ 3, the Simply Moving and Simply Storage defendants since September 2022, *id.* ¶ 5, and Marcali since October 2023, *id.* ¶ 2. In its over two years of representing Defendants, Morrison Cohen has spent hundreds of hours working on this litigation. *Id.* ¶ 46. Rubin and several Morrison

Cohen attorneys who have worked on the matter have submitted declarations stating that Rubin did not engage in any work related to this litigation. Doc. 102 ¶ 32; Doc. 103 ¶ 6; Doc. 108 ¶ 12; Doc. 111 ¶ 11. The declarations, which were submitted by Rubin as well as every Morrison Cohen attorney who billed more than fifty hours related to this litigation, attest that Rubin has not communicated, disclosed, or offered information or materials related to his relationship with Dumbo since he joined Morrison Cohen. Doc. 102 ¶¶ 32, 42; Doc. 103 ¶ 8; Doc. 107 ¶¶ 5–11; Doc. 108 ¶¶ 5–10; Doc. 109 ¶¶ 4–10; Doc. 111 ¶¶ 9–11.

On August 23, 2023, Law 360 published an article discussing this case and identifying Morrison Cohen as counsel for Defendants. Doc. 102 ¶ 26. After seeing the article that same day, Rubin called Perkins and informed him for the first time that he had provided legal services to Dumbo before joining the firm. *Id.* ¶¶ 26–27; Doc. 111 ¶ 6–7. Rubin did not disclose the nature of his services or any confidential information pertaining to Dumbo. Doc. 102 ¶ 27; Doc. 111 ¶ 8. Immediately following the call, Perkins notified Morrison Cohen's general counsel and the chair of the firm's ethics committee. Doc. 102 ¶ 28; Doc. 105 ¶ 9. Within forty-eight hours of Rubin's call identifying his prior work with Dumbo, Morrison Cohen implemented an ethical wall proscribing those working on the Dumbo matter from discussing it with Rubin and preventing Rubin from accessing papers or files related to it. Doc. 102 ¶¶ 28–30. Morrison Cohen's IT department and litigation support group took measures to ensure only those assigned to the matter would have access to related files. Doc. 110 ¶¶ 2–3; Doc. 106 ¶ 4–5. All paper files related to the matter were removed from the firm's central file room to be stored securely in the offices of attorneys working on the matter. Doc. 105 ¶ 11. Audits of Morrison Cohen's electronic files for this matter found that Rubin had "never created, viewed, deleted or uploaded any documents or materials of any kind." Doc. 110 ¶ 4. Rubin also attests that files he maintained from his prior practice were

never accessed from a Morrison Cohen device or stored within Morrison Cohen.  Doc. 111 ¶ 13.

On November 6, 2023, counsel for Dumbo first recognized that Rubin had joined Morrison Cohen, and he sent counsel for Defendants a letter identifying the potential conflict.  Doc. 98 ¶¶ 25–29.  On November 9, 2023, counsel for Defendants replied that an ethical wall had been implemented upon learning that Rubin had performed services relating to Dumbo.  *Id.* ¶ 30.

Rubin left Morrison Cohen on December 31, 2023.  Doc. 104 ¶ 12.  On January 10, 2024, Dumbo moved to disqualify Rubin and Morrison Cohen as counsel for Defendants.  Doc. 97.

## II.  LEGAL STANDARD

"The New York Rules of Professional Conduct prohibit attorneys from successive representation."  *American International Group, Inc. v. Bank of America Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011).  Specifically, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  *Network Apps, LLC v. AT&T Mobility LLC*, 598 F. Supp. 3d 118, 128 (S.D.N.Y. 2022) (alteration in original) (quoting N.Y. R. Prof'l Conduct 1.9(a)).  "However, the Court's primary concern is with the integrity of the adversary process, not the enforcement of the ethical rules."  *American International*, 827 F. Supp. 2d at 345.  As a result, "not every violation of a disciplinary rule will necessarily lead to disqualification."  *Id.* (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

In considering a motion to disqualify counsel, "the Court must 'attempt[] to balance a client's right freely to choose his counsel against the need to maintain the highest standard of the profession.'"  *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38,

4

55 (S.D.N.Y. 2017) (alteration in original) (quoting *Hempstead Video*, 409 F.3d at 132). In general, "motions to disqualify counsel are disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation." *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 388 (S.D.N.Y. 2010). "A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation." *Vilella v. PUP Culture LLC*, No. 23 Civ. 2291 (LJL), 2024 WL 1407059, at *1 (S.D.N.Y. Apr. 2, 2024) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). "The Court's role, therefore, is not to police each and every violation of professional rules, but rather to ensure that the proceeding before it is free from taint." *Streichert v. Town of Chester*, No. 19 Civ. 7133 (KMK), 2021 WL 735475, at *4 (S.D.N.Y. Feb. 25, 2021). "In the end, after careful analysis, a motion to disqualify is 'committed to the sound discretion of the district court.'" *First NBC Bank*, 259 F. Supp. 3d at 56 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994)). Where a party moves to disqualify counsel based on successive representation,

> disqualification is appropriate when: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Nike, Inc. v. Lululemon USA Inc.*, No. 23 Civ. 771 (JPO), 2023 WL 5938942, at *1 (S.D.N.Y. May 1, 2023) (citing *Hempstead Video*, 409 F.3d at 133).

### III. DISCUSSION

#### A. Rubin

Rubin ceased any affiliation with Morrison Cohen as of December 31, 2023, thereby eliminating any ongoing concern relating to his individual involvement. Doc. 102 ¶ 45. Dumbo's motion to disqualify is therefore moot as to Rubin. *See Network*


*Apps*, 598 F. Supp. 3d at 124 n.2 (S.D.N.Y. 2022) (finding a motion to disqualify moot with regard to a firm that was not representing the plaintiffs).

### B. Morrison Cohen

"An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences." *Hempstead Video*, 409 F.3d at 133. In *Hempstead Video*, however, this Circuit joined the "strong trend" of allowing the presumption of confidence sharing within a firm to be rebutted where the facts demonstrate effective screening measures were implemented to avoid misuse of the prior client's confidences. *See id.* at 133–34. "When evaluating whether this presumption of shared confidences has been rebutted, '[c]ourts should inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint.'" *Victorinox AG v. B&F Sys., Inc.*, 200 F. Supp. 3d 423, 426 (S.D.N.Y. 2016) (alteration in original) (quoting *Hempstead Video*, 409 F.3d at 137).

Dumbo relies on *Kassis v. Teacher's Insurance & Annuity Ass'n*, 717 N.E.2d 674 (N.Y. 1999), to argue that "when an attorney has played an 'appreciable role' in representing an adversary in a similar matter, a screen will, as a matter of law, be ineffective to rebut the presumption of shared confidences." Doc. 100 at 10. In *Kassis*, the court found that an ethical wall was insufficient where the disqualified attorney had "actively represented the opposing party on the same matter in litigation," 717 N.E.2d at 676, and the law firm facing disqualification made only "conclusory averments" that the lawyer in question did not acquire material confidences, *id.* at 679. The *Kassis* court, however, explicitly declined to adopt a per se disqualification rule. *See id.* at 677 (noting that a per se disqualification rule "conflicts with public policies favoring client choice and restricts an attorney's ability to practice" (citation omitted)); *see also Berkley Custom Ins. Managers v. N.Y. Risk Services Group*, No. 18 Civ. 09297 (LJL), 2020 U.S. Dist. LEXIS 196600, at *16–18 (S.D.N.Y. Oct. 22, 2020) (noting that *Kassis* and case law in this Circuit support allowing the presumption of confidence sharing and disqualification to be

rebutted). The *Kassis* court stated that "[t]o determine whether the presumption of shared confidences and disqualification has been rebutted, consideration must be given to the particular facts of each case." 717 N.E.2d at 678.

Here, assuming that Rubin would be conflicted from representing Defendants, the Court nonetheless finds that Defendants have successfully rebutted the presumption of confidence sharing. Morrison Cohen's ethical wall was raised within forty-eight hours of learning about Rubin's prior relationship with Dumbo. Doc. 102 ¶¶ 28–30. The ethical wall prevented Rubin from accessing electronic or physical files related to the matter and prevented all assigned personnel from communicating with Rubin about the matter. *Id.*; Doc. 105 ¶¶ 10–12. Rubin also separately affirmed that he never worked on the matter while at Morrison Cohen. Doc. 111 ¶ 11. This ethical wall suffices to rebut the presumption that Morrison Cohen LLP shares Rubin's conflict. *See American International*, 827 F. Supp. 2d at 346 ("One method of rebutting the presumption is by demonstrating a timely and effective ethical screen that fences the disqualified attorney from the other attorneys in the firm in connection with the case for which the conflict is alleged." (internal quotation marks and citations omitted)); *cf. Cole Mechanical Corp. v. Nat'l Grange Mut. Ins. Co.*, No. 06 Civ. 2875 (LAK) (HBP), 2007 WL 2593000, at *7 n.4 (S.D.N.Y. Sept. 7, 2007) (noting that where one attorney is walled off, "disqualification of the individual attorney may not necessarily require disqualification of the firm," but granting motion to disqualify because there was "no evidence" that the attorney in question had been sufficiently isolated).

Dumbo faults Morrison Cohen for its insufficient initial check of Rubin's potential conflicts during the hiring process, arguing that the ethical wall's late implementation—months after Rubin joined Morrison Cohen—defeats the screen's effectiveness. Doc. 112 at 6–9. "However, flawed screens—including late screens—are not fatal." *American International*, 827 F. Supp. 2d at 346. In *American International*, where an ethical wall was not implemented for over a month after the conflict originated, the court nonetheless

found that the presumption of confidence sharing was successfully rebutted given the implementation of the ethical wall within twenty-four hours of discovering the conflict. *Id.* Here too, the implementation of the wall promptly after discovering the conflict but months after Rubin joined the firm does not render the wall ineffective.

The ethical wall was erected within forty-eight hours of Rubin alerting the firm of the conflict. Doc. 105 ¶¶ 10–12. In *Nike*, where defendant's counsel in a patent infringement case had previously represented the plaintiff in a number of patent matters, the court found that the presumption of confidence sharing was successfully rebutted by the imposition of an ethical wall within two days of discovering the conflict. *Nike*, 2023 WL 5938942, at *2. The court specifically noted that the "passage of two days [between the firm learning of the conflict and implementing the ethical wall] does not raise a risk of taint" in the disqualification context. *Id.*

Dumbo suggests that information from Rubin's relationship with Dumbo may have been shared with Morrison Cohen attorneys before the ethical wall was erected. Doc. 100 at 14. The Court finds that Defendants have rebutted any presumption that confidences were shared before the ethical wall was implemented. Morrison Cohen personnel, as well as Rubin, have attested through declarations submitted to this Court that no information or materials from Rubin's representation of Dumbo were shared. Doc. 102 ¶ 32; Doc. 103 ¶¶ 6–8; Doc. 106 ¶ 5; Doc. 107 ¶¶ 6–7; Doc. 108 ¶¶ 6–7; Doc. 109 ¶¶ 5–6; Doc. 110 ¶ 4; Doc. 111 ¶ 10. The Court finds no reason to doubt the sincerity of their declarations, which weigh against the presumption of conflict. *See American International*, 827 F. Supp. 2d at 346 ("[C]ourts in this jurisdiction have . . . found that such affidavits are reliable proof that confidences have not been shared."); *see also Nike*, 2023 WL 5938942, at *2 (citing a declaration submitted by the conflicted attorney as well as the implementation of an ethical wall in denying motion to disqualify). Moreover, audits of Morrison Cohen's electronic files for this matter found that Rubin had "never created, viewed, deleted or uploaded any documents or materials of any kind." Doc. 110

¶ 4; *see American International*, 827 F. Supp. 2d at 347 (where an electronic audit of the firm's files for the matter at issue revealed only two documents that the conflicted attorney had accessed, court denied the motion to disqualify the firm as counsel).

Given the timely implementation of an ethical wall, the declarations affirming that no confidences were transferred by Rubin to current Morrison Cohen attorneys, and Rubin's departure from the firm, there is no meaningful suggestion that the adversarial process will be tainted. By contrast, given the significant resources already expended litigating the case and the costs associated with finding new counsel, the Court finds that it would be "unduly prejudicial" to disqualify Morrison Cohen. *American International*, 827 F. Supp. 2d at 347; *see also Reilly v. Comput. Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 8 (E.D.N.Y. 2006) (noting the "substantial transaction cost" that disqualification imposes on a party).

## IV.  CONCLUSION

For the foregoing reasons, Dumbo's motion to disqualify counsel is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 97.

It is SO ORDERED.

Dated:    June 20, 2024
          New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.