

**Stephen E. Turman**
Member
NY & NJ Bars
Email:  sturman@turmanlegal.com

July 16, 2024

**VIA ECF**

Hon. Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re: ***Dumbo Moving & Storage, Inc. v. Piece of Cake Moving & Storage LLC et al.***
        Case No. 22-CV-05138 (ER)

Dear Judge Ramos:

  Further to your Order of July 9, 2024, Plaintiff Dumbo Moving & Storage, Inc. ("Dumbo") respectfully submits this letter in response to Defendants' joint letters (ECF Nos. 125 and 126) requesting a pre-motion discovery conference regarding the purported deficiencies in Dumbo's interrogatory responses, now set to be heard on July 24, 2024 at 11:30AM.  For the reasons set forth below, Dumbo requests that Defendants' motion be denied and that Defendants' be ordered to promptly exchange source code with Dumbo.

  First, Dumbo emphatically disagrees with Defendants' assertions that these responses "fail to identify Dumbo's purported trade secrets with 'reasonable particularity'".  Attached as Schedule A to Dumbo's responses to Defendants' interrogatories (*see* Exhibit C to Defendants' letter) is a 21-page document entitled "Dumbo Moving Preliminary Trade Secrets Identification (with Exemplary Citations to Computer Code)".  This document specifically identifies twelve (12) specific trade secrets found in Dumbo's source code.  With respect to each trade secret, Dumbo provides the Defendants with: (a) a summary of the functionality for that trade secret; (b) the identity of each directory in which the files for the described functionality are located in Dumbo's source code; (c) the identity of the key files for each of enumerated trade secret; and, where applicable, (d) the location of test files for each trade secret within Dumbo's source code.  Dumbo also includes screenshots from its source code illustrating the applicable features that are described.  The level of detail provided by Dumbo in these responses clearly enables Defendants to understand, with particularity, the trade secrets that Dumbo claims were



Hon. Edgardo Ramos
July 16, 2024
Page 2

misappropriated by Defendants.  We are aware of no caselaw in this jurisdiction that would require Dumbo to identify each of its trade secrets by specific lines of code, particularly at this early stage of discovery—*i.e.*, **before** the parties have exchanged copies of their respective source code for expert analysis.

Second, Dumbo has been ready, willing, and able to exchange source code with the Defendants as previously agreed months ago.  The Defendants are leveraging their misplaced assertion that Dumbo has not identified its trade secrets with sufficient particularity to delay this exchange and prevent this case from advancing.  In *DeRubeis*, the district court identified four policy considerations underlying the need for specificity in the disclosure of trade secrets, including: (1) preventing fishing expeditions, (2) ensuring that subsequent discovery is relevant, (3) advising defendants regarding the trade secrets allegedly misappropriated, and (4) ensuring that plaintiff will not mold its cause of action around the discovery it receives.  *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).  The detail provided by Dumbo in its Schedule A for each of the twelve (12) trade secrets is more than sufficient to satisfy these requirements.  It is time for Defendants to exchange source code and address the merits of Dumbo's claims.

Third, Defendants' allegation that Dumbo failed to identify its trade secrets in a manner that distinguishes them from generally known matters is misplaced.  While Dumbo believes that the entirety of its software is indeed a trade secret, it clearly states that "for purposes of *this litigation*, Dumbo identifies a subset of those features with particularity." (Schedule A at p. 1)(emphasis added). There is no authority that requires Dumbo to disclaim unasserted trade secret rights in connection with its identification of the trade secrets it asserts were misappropriated for purposes of *this litigation*.

Fourth, the Defendants mistakenly argue that the inclusion of elements which may be generally known, such as open-source library elements, within an otherwise novel and secret arrangement would preclude Dumbo's source code from trade secret protection.  Pursuant to 18 USC § 1839, a trade secret is defined as any "information [which] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  This standard does not require a trade secret to be compiled entirely of unique components.  In fact, the Second Circuit specifically holds that a



Hon. Edgardo Ramos
July 16, 2024
Page 3

"trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design, and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Integrated Cash Mgmt. Servs., Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) (quoting *Imperial Chem. Indus. Ltd. v. Nat'l Distillers and Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)). For example, the "11 herbs and spices" in the recipe for Kentucky Fried Chicken are each likely well-known ingredients, but the combination in the recipe may still be a trade secret. Moreover, as expressly noted in Schedule A, "Dumbo does not assert trade secret protection in any open-source library elements apart from the overall configuration of the source code performing the high-level functionality described herein." (Schedule A at p. 1).

Finally, Defendants' demand that Dumbo provide Defendants with its source code as it existed at the time of the alleged misappropriation in 2018 and identify the alleged trade secrets in the 2018 version of the source code instead of a more current version is baseless. Trade secret plaintiffs are required to identify asserted trade secrets with "reasonable particularity" and Dumbo has done so. Defendants' have cited no authority, and we are aware of no authority, that require Dumbo to go back in time to the date of misappropriation to identify Dumbo's trade secrets that it asserts remain embodied in its software.

Dumbo has identified its trade secrets with reasonable particularity as required. Dumbo has been prepared to exchange source code with the Defendants for several months, and it is the Defendants that are withholding production. At this point, the parties should commence with document discovery, starting with the long-overdue exchange of source code.

Respectfully submitted,

*Stephen Turman*

Stephen E. Turman

cc: All Counsel of Record