UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DUMBO MOVING & STORAGE, INC.,

      Plaintiff,

    v.

PIECE OF CAKE MOVING & STORAGE LLC,
SIMPLY MOVING LLC, SIMPLY MOVING &
STORAGE LLC, VOJIN POPOVIC, STEFAN
MARCALI and VOLODYMYR PLOKHYKH,

      Defendants.

Case No. 22-CV-05138 (ER)

---

**MEMORANDUM OF LAW BY PLAINTIFF DUMBO MOVING & STORAGE, INC.,
IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFF'S TRADE
SECRET IDENTIFICATION AND, IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT**

---

**TURMAN LEGAL SOLUTIONS PLLC**
626 RXR Plaza, 6th Floor
Uniondale, NY 11556
(516) 266-6106

    -and-

**ACKnowledge IP P.C.**
6800 Jericho Turnpike, Suite 120W
Syosset, NY 11791
(631) 970-7060

*Counsel for Plaintiff Dumbo Moving &
Storage, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ................................................... 1

    A.  Factual Background of Dumbo's Trade Secrets ................................................. 1

    B.  Procedural Background ......................................................................................... 2

II.   LEGAL ARGUMENT ................................................................................................... 3

    A. Dumbo's Interrogatory Responses Identify its Trade Secrets with Reasonable Particularity ... 3

    B. Mr. Walker's Conclusory Opinions Do Not Render Dumbo's Identification of its Trade Secrets Deficient ................................................................................ 8

    C. Defendant's Request for Summary Judgement is Premature and Riddled with Questions of Fact ............................................................................................ 10

       1.  Summary Judgment is Premature Without Adequate Discovery .......................................... 10

       2.  Genuine Questions of Fact Preclude Summary Judgment ....................................................... 11

CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Applied Predictive Techs. v. MarketDial, Inc.,:19-CV-496,*
  *2024 WL 3759894 (D. Utah Aug. 12, 2024)* ............................................................... 9
*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................................. 12
*Berne Street Enterprises, Inc. v. American Export Isbrandtsen Co.,*
  289 F. Supp. 195 (S.D.N.Y 1968) ............................................................................ 12
*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................ 11, 12
*DeRubeis v. Witten Technologies, Inc.,*
  244 F.R.D. 676 (N.D. Ga. 2007) ............................................................................... 5
*InteliClear, LLC v. ETC Glob. Holdings,*
  978 F.3d 653 (9th Cir. 2020) ............................................................................ passim

Rules

Fed. R. Civ. P. 56(d) ................................................................................................... 12
Fed. R. Civ. P. 56(f) ................................................................................................... 12

**INTRODUCTION**

Plaintiff Dumbo Moving & Storage Inc. ("Dumbo"), a moving and storage company, submits this opposition to the motion filed on August 23, 2024 (ECF. No. 133) by Defendants Piece of Cake Moving & Storage LLC ("POC"), Simply Moving LLC ("Simply Moving"), Simply Moving & Storage LLC ("Simply Moving & Storage"), Vojin Popovic, Stefan Marcali, and Volodymyr Plokhykh (collectively, the "Defendants"). The Defendants seek to compel Dumbo to identify its trade secrets with more particularity or, in the alternative, move for partial summary judgment, arguing that Dumbo's current identification is vague and insufficient.  Defendants' motion should be denied in its entirety as Dumbo  has already provided  detailed and specific identification of its trade secrets with reasonable particularity, consistent with the Court's prior order and applicable authority. It is now time for Defendants' to stop evading their discovery obligations so this case can finally move forward.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background of Dumbo's Trade Secrets

In 2016, Dumbo began developing a comprehensive software package designed to streamline key operations within the moving industry. Although Dumbo is not a software development company, it recognized the unique operational challenges it faced and invested significant time and resources into creating proprietary software that would provide a competitive advantage.  At that time, Dumbo's CEO, Lior Rachmany, was unaware of any commercially available software that could adequately meet the company's specific needs. (Second Amended Complaint (ECF 66) at ¶¶ 14-16). The resulting software exceeded expectations, becoming an integral component of Dumbo's operational success. (*See id.* at ¶¶ 34-37). Unfortunately, shortly after its completion, the Defendants recognized the software's value and misappropriated it in its entirety, unlawfully benefiting from Dumbo's trade secrets without authorization.  (*See id.* at ¶¶ 54-55).

1

Dumbo's software embodies a unique expression of source code, protected by copyright, and incorporates several trade secrets that stem from Dumbo's extensive knowledge of the moving industry. These trade secrets are specifically tailored to provide innovative solutions for industry challenges. While Dumbo's trade secrets are not confined to individual lines of source code, it has identified them with sufficient particularity by offering detailed narrative descriptions, illustrative screenshots of key features, and specific references to the directories and files within the software where the trade secrets are implemented. This thorough identification satisfies the requirement of reasonable particularity, especially given that it was provided before the exchange of meaningful discovery.

### B.    <u>Procedural Background.</u>

In response to the Court's April 10, 2024 order (ECF 118), Defendant POC served interrogatories requesting a more detailed definition of Dumbo's trade secrets. On June 4, 2024, Dumbo served its initial responses to Defendants' interrogatories, which include a 21-page document titled "Dumbo Moving Preliminary Trade Secrets Identification (with Exemplary Citations to Computer Code)" ("Schedule A").  (*See* Declaration of Fred Perkins, Esq., dated August 23, 2024 ("Perkins Decl.") at ECF 135-1 and 139-1).  At POC's request for larger copies of the screenshots included in Schedule A, Dumbo supplemented its responses on August 5, 2024, by providing enlarged screenshots as Exhibit B, along with further expanded narrative descriptions  of its trade secrets.  (Perkins Decl. at ECF 135-2 and ECF 139-2).

Dumbo's Schedule A describes twelve (12) distinct trade secrets, each of which is embedded within Dumbo's proprietary source code.  For each trade secret, Dumbo provided Defendants with: (a) a brief narrative summary of the functionality of the trade secret; (b) where applicable, screenshots illustrating the trade secret in operation within Dumbo's Software; (c) the directories in the source code where the files for the described functionality are located; (d) the key files in the

2

source code where each trade secret is embodied; and (e) where applicable, the location of test files related to each trade secret. Additionally, Dumbo included further screenshots from its operating software to further illustrate the described features where appropriate.

Dumbo has not yet produced the underlying source code referenced in Schedule A, but this delay is entirely due to Defendants' actions. Dumbo has been ready, willing, and able to exchange source code with Defendants, as agreed upon months ago. However, Defendants have refused to proceed, maintaining their position that Dumbo has not identified its trade secrets with sufficient particularity. Dumbo rejects Defendants' demand for unilateral production of its source code without reciprocal discovery, particularly since Dumbo has already provided detailed identification of its trade secrets in full compliance with the Court's order.  Throughout this process, Dumbo has acted in good faith by supplementing its responses promptly and cooperating with Defendants' requests for further clarification. Despite this, Defendants have refused to engage in reciprocal discovery.

## II.  LEGAL ARGUMENT

### A.    Dumbo's Interrogatory Responses Identify its Trade Secrets with Reasonable Particularity

There is no dispute that Dumbo was required by this Court's April 10, 2024 order (ECF 115) to provide further detail regarding its trade secrets and to identify each with "reasonable particularity."  Dumbo fully complied with the Court's order by providing detailed descriptions of its trade secrets in Schedule A. Unlike the Second Amended Complaint, which offers only a high-level narrative, Schedule A includes expanded narratives, exemplary screenshots from Dumbo's software, and an identification of specific files and directories in the Dumbo Software where each trade secret is embedded.  This disclosure, which is inherently tied to Dumbo's proprietary software, is both specific and detailed, clearly outlining the trade secrets Dumbo claims were misappropriated.

Despite Dumbo's detailed disclosures—including expanded narratives, file and directory

3

identifications, and screenshots illustrating the trade secrets in operation—Defendants continue to claim that more specificity is needed, yet fail to articulate what additional information would satisfy them. This ongoing demand for further detail appears to be a tactic aimed at delaying discovery and obstructing Dumbo's pursuit of its claims. Given the level of detail already provided, no reasonable amount of supplementation is likely to resolve Defendants' concerns.

Although this case has been pending since June 2022, discovery has not meaningfully progressed due to Defendants' refusal to produce any documents or materials until this issue is resolved. Both parties have exchanged document requests and written responses, yet Defendants continue to withhold discovery based on the claim that Dumbo's trade secret identification lacks sufficient particularity. At this early stage of litigation, Dumbo is not required to prove the validity of its asserted trade secrets in order to identify its trade secrets with reasonable particularity, as Defendants suggest. Rather, the "reasonable particularity" requirement is framed by two key considerations: (1) the need to shape discovery effectively, and (2) the necessity of protecting Defendants from claims too vague to defend against. Dumbo's current trade secret definitions set forth in its supplemental interrogatory responses, including Schedule A, more than meet these requirements.

The limited progress in discovery further underscores that Dumbo's disclosures are appropriate at this stage. Particularly where no substantive discovery has occurred, it is not not improper for Dumbo's claims that the trade secret descriptions leave some room for refinement as the case proceeds. As the court in *InteliClear, LLC v. ETC Glob. Holdings* noted: "[a]t this stage, particularly where no discovery whatsoever had occurred, it is not fatal to [Plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later." 978 F.3d 653, 659 (9th Cir. 2020). The court further emphasized that "[f]ederal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of

4

discovery." *Id.* at 662.  The iterative process of refining trade secret identifications through discovery "acknowledges the inherent tension between a party's desire to protect legitimate intellectual property claims and the need for intellectual property law to prevent unnecessary obstacles to useful competition." *Id.*

While no hard-and-fast rules govern the sufficiency of trade secret disclosure, courts often consider four policy factors: (1) preventing fishing expeditions, (2) ensuring that subsequent discovery is relevant, (3) advising defendants of the specific trade secrets allegedly misappropriated, and (4) ensuring that the plaintiff does not mold its claims around the discovery it receives.  *See DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).

When viewed through the lens of the *DeRubeis* factors, Dumbo has more than satisfied its burden to disclose its trade secrets with reasonable particularity. Dumbo is clearly not engaged in a "fishing expedition" in pursuit of vague claims of misappropriation.  The alleged misappropriation is directly tied to Dumbo's proprietary software, which Dumbo assertsDefendants misappropriated in its entirety. Dumbo has provided specific references to the files and directories within its proprietary software where these features are implemented, giving Defendants clear notice of what Dumbo believes was misappropriated. Given these detailed disclosures, discovery can now proceed efficiently, starting with the long-overdue exchange of source code, which will quickly confirm or refute Dumbo's allegations.

It is entirely appropriate for Dumbo to refine its trade secret definitions during the course of discovery.  In this case, however, any later refinement in Dumbo's trade secrets definitions will necessarily be limited by the content of its own software. Since Dumbo's trade secrets are tied to features embedded within its software—which will be produced to Defendants—there is little risk that Dumbo will improperly expand the scope of its trade secret claims  based on the discovery it receives.  *See InteliClear, LLC*, 978 F.3d at 662 ("In [trade secrets] cases, discovery provides an

5

iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification."). In short, Dumbo's trade secrets are defined with sufficient particularity to provide Defendants with all the protections contemplated by *DeRubeis*.

Defendants argue that "in defining its trade secrets with reasonable particularity, a plaintiff must distinguish its trade secrets from generally known information." (Def. Brief (ECF 134 and 138) at p. 13). Defendants attempt to expand this proposition to blur the line between what is required to identify a trade secret with reasonable particularity and what is required to prove that an asserted trade secret is valid. In doing so, Defendants' impose an unreasonable and improper burden on Dumbo by suggesting that Dumbo must be aware of, and distinguish its trade secrets from, all public knowledge in order to identify its trade secrets. While Dumbo may ultimately bear the burden of distinguishing its trade secrets from public domain information developed during discovery, there is no authority requiring Dumbo to conduct an exhaustive search of all potentially relevant public information before asserting a trade secret. Indeed, the cases cited by Defendants impose no such burden. To the contrary, one of Defendants' own cited cases explicitly states that a plaintiff need only ensure that "the fact finder knows what it is that the plaintiff ***claims*** is not generally known or readily ascertainable." *Applied Predictive Techs. v. MarketDial, Inc.*, 2:19-cv-496-JNP-CMR, at 21 (D. Utah Aug. 12, 2024)(emphasis added). This standard merely requires a plaintiff to state its belief. Dumbo could not find any authority requiring a plaintiff in a DTSA case to conduct an exhaustive search to confirm that its trade secrets were not somehow known to the general public at any point, let alone before discovery is completed.

Dumbo has provided detailed disclosures of its twelve enumerated trade secrets with sufficient specificity for Defendants to evaluate them against public domain information. Dumbo also stated in its responses:

> When Dumbo began the development of its Dumbo Software, it was not aware of commercially available software for the moving

6

industry, and is still unaware of software for the moving industry that performs the features and functions of Dumbo's trade secrets detailed in Schedule A.  Although an internet search shows that third-party software companies now offer software for the moving industry, Dumbo is not aware of the features and operation of any such software.  Therefore, upon information and belief, Dumbo derives independent economic value from its trade secrets not being generally known and Dumbo's trade secrets detailed in Schedule A are distinguishable from "material that is in the public domain or otherwise generally known.

(Dumbo Supplemental Response to Interrogatory No. 11).  Thus, Schedule A properly informs Defendants of what Dumbo claims is not generally known based on its current knowledge, which is all that is required at this stage, before any meaningful discovery has taken place.

Defendants attempt to bolster their argument with a lengthy string cite of cases that, upon closer inspection, have no relevance to the current procedural posture or the specific nature of the misappropriation claims in this case. (Def. Brief at p. 14). None of these cases arise from this judicial district or constitute binding authority on this Court. Moreover, even if considered as persuasive authority, none of the cited cases actually support Defendants' assertion that Dumbo bears the burden of conducting a public domain search to properly assert its trade secrets.

The cases cited by Defendants typically arise in the context of summary judgment or post-trial motions, after substantial discovery has occurred and the parties have had the opportunity to fully develop their claims and defenses, including that the asserted trade secrets are not "secret."One notable exception is *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020), which presents a similar procedural posture and  directly contradicts Defendants' position. In *InteliClear*, as in this case, the defendant moved for summary judgment before any meaningful discovery had taken place. The Ninth Circuit reversed, holding that the district court abused its discretion in dismissing the trade secrets claim without permitting discovery. The court recognized that in trade secret cases, "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.*

7

Defendants' repeated reference to Rule 11 is wholly misplaced. Rule 11 does not impose any duty on Dumbo, or any trade secrets plaintiff, to thoroughly investigate the features and operation of all publicly known systems across the world before asserting that it possesses a trade secret. The correct standard simply requires Dumbo to identify what it claims is not generally known or readily ascertainable, and Dumbo has more than met this requirement. *Applied Predictive Techs. v. MarketDial, Inc.*, 2:19-CV-496-JNP-CMR, 2024 WL 3759894, at 6-9 (D. Utah Aug. 12, 2024).

### B.    Mr. Walker's Conclusory Opinions Do Not Render Dumbo's Identification of its Trade Secrets Deficient

In an effort to undermine Dumbo's identification of trade secrets, Defendants have identified several sources of allegedly public information and presented an "expert" who claims that these sources disclose Dumbo's trade secrets.  This argument, which attempts to undermine the validity of Dumbo's trade secrets, is both legally and factually flawed.  At this stage of the case, Dumbo's burden is simply to allege what it claims is not generally known, and it has done so. The materials cited by Defendants and their expert were introduced for the first time in connection with Defendants' motion.  This material was not produced in discovery and there is no foundation for their authenticity or admissibility.  Moreover, Defendants' claim that Dumbo failed to distinguish its trade secrets from these unverified third-party referencesis baseless as Dumbo's identification of its trade secrets already include enough detail to distinguish over this material.

Even if the sources of public information identified by Defendants  were established to be admissible evidence,  they remain of limited significance.  For example, the Walker declaration identifies six "moving industry software systems" and suggests that "a particularized disclosure of trade secrets would include sufficient detail to distinguish Dumbo's Alleged Trade Secrets from these disclosures."  (Walker Decl. at ¶41).  It is not Dumbo's burden to search for these references  or to provide distinctions over these specific references.  In addition, Mr. Walker confirms the limited relevance of these refernces since he offers no substantive analysis or evidence that they disclose

8

anything  that would place Dumbo's trade secrets in the public domain.

The materials Mr. Walker did actually analyze include generalized client relationship management references, such as the book *CRM for Dummies* and the "CRMSuite" software, neither of which contain disclosures relevant to the moving industry.  Dumbo's enumerated trade secrets are narrowly directed to the moving industry, and these generic CRM references relied on by Mr. Walker do not reveal any of Dumbo's trade secrets.  (*See* declaration of Ross Malaga, Ph.D., dated September 27, 2024, which was filed contemporaneously with this memorandum (the "Malaga Decl.") at ¶¶ 27-28).

Mr. Walker also relies heavily on a four-minute advertisement video for third-party software by a company called Supermove ("Supermove Advertisement").  This reliance is problematic for several reasons.  First, the content of the Supermove Advertisement is vague, and the video captures provided by Mr. Walker are entirely illegible. (Malaga Decl. at ¶¶22, 24, 35, 55 and 57)  Second, the advertisement was not released until  May 26, 2023, five years after the alleged misappropriation of Dumbo's trade secrets.  (Malaga Decl. at ¶ 19).  Thus, even if the video disclosed some of Dumbo's trade secrets—which it does not—this would not affect Dumbo's rights prior to its publication and would be relevant, at most, to damages.  As confirmed by the declaration of Dr. Malaga filed herewith, nothing in the Supermove Advertisement suggests that Dumbo's current trade secret identification is deficient.

Mr. Walker's *curriculum vitae* highlights his background in computer science and electrical engineering but reveals no experience in the moving industry or in developing software for logistics-based industries. Thus, when Mr. Walker repeatedly asserts that "such implementations are well known in the industry" (Walker Decl. at ¶31), he is filling gaps in his analysis without the benefit of any relevant industry expertise. These opinions do not appear to have any foundation in  knowledge of the moving industry and should be given little, if any, weight.

9

Mr. Walker's ultimate conclusions result from his flawed methodology and intentional disregard of key details in Dumbo's disclosures, leading to overgeneralizations of Dumbo's trade secrets and the public information. To reach his conclusions, Mr. Walker ignored the express limitations in Dumbo's trade secret definitions, which are specifically limited to the moving industry. (Malaga Decl. at ¶¶ 6, 27, 38, 40-41, and 48). He also disregarded the clear disclosure by Dumbo of file names and directories for each trade secret, which provide a roadmap to any skilled programmer—such as himself—once Defendants agree to exchange source codes. (*See, e.g.,* Malaga Decl. at ¶¶ 10, 12, 14, 32, and 44-46). Additionally, Mr. Walker failed to give any weight to the screenshots included in Dumbo's disclosures and, in some cases, overlooked express limitations within the narrative descriptions. (*See e.g.*, Malaga Decl. at ¶¶ 12-14, 23-25, 32, 57). By stripping away these essential details from his analysis, it is unsurprising that Mr. Waker comes to erroneous conclusions that Dumbo's trade secrets were indistinguishable from public domain information.

## C.    Defendant's Request for Summary Judgement is Premature and Riddled with Questions of Fact

Defendants' request for partial summary judgment is not only procedurally improper but also premature. At this early stage in the litigation, fundamental questions of fact remain unresolved, and the parties have yet to engage in meaningful discovery. Summary judgment is a mechanism designed to resolve cases where there is no genuine issue of material fact, but here, Defendants' motion seeks to sidestep critical factual disputes that must first be developed through discovery. In trade secret misappropriation cases, particularly those involving complex software, discovery is essential to develop the factual record necessary for a fair resolution.

### 1.    Summary Judgment is Premature Without Adequate Discovery

It is well-settled that summary judgment is inappropriate where the nonmoving party has not had a "full opportunity to conduct discovery" to gather evidence necessary to oppose the motion.

10

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Courts routinely deny summary judgment motions when discovery has not progressed sufficiently, particularly in complex cases involving nuanced factual issues, such as trade secret misappropriation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986) (pursuant to Fed. R. Civ. P. 56(f), summary judgment should be refused "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").  Moreover, under Fed. R. Civ. P. 56(d), summary judgment is inappropriate when the nonmoving party has not had sufficient time to conduct discovery.  Given that discovery in this case is in its infancy, with no documents or source code yet exchanged, Defendants' request for summary judgment is premature.

Here, discovery is in its infancy. The parties have exchanged written requests but have not produced any documents or exchanged critical materials, including source code. Dumbo has provided detailed identification of its trade secrets in compliance with the Court's order, but it has not yet received Defendants' documents, materials, or source code that are vital to its case. Given the absence of this key discovery, Defendants' request for summary judgment is premature and should be denied on that basis alone.  *See Celotex,* 477 U.S. at 322; *see also Berne Street Enterprises, Inc. v. American Export Isbrandtsen Co.*, 289 F. Supp. 195, 196-97 (S.D.N.Y 1968) (denying summary judgment as premature when discovery had not yet commenced).

## 2. Genuine Questions of Fact Preclude Summary Judgment

Even if discovery had progressed further, Defendants' motion is improper because it relies on a factual narrative that is far from settled.  Trade secret misappropriation claims are particularly fact-sensitive, often requiring detailed comparisons between the proprietary information at issue and the defendants' use of that information.  Courts have long recognized that these disputes involve substantial factual determinations, which cannot be resolved before the completion of discovery.

11

Dumbo has identified twelve trade secrets related to its proprietary software. Defendants, through their expert Mr. Walker, have made sweeping generalizations that these trade secrets are allegedly "well-known" or publicly available.   As explained earlier, the allegedly publicly available information has not been authenticated through discovery, Mr. Walker's opinions are conclusory and disregard critical limitations within Dumbo's trade secret disclosures, Mr. Walker has not been deposed to explore his flawed methodology and conclusions, and Mr. Walker's opinions are contradicted by those of Dr. Malaga.  Whether any of Dumbo's asserted trade secrets are in fact well-known, as Defendants claim, or proprietary to Dumbo is a core factual dispute that cannot be resolved without a full examination of the evidence, including a detailed review of the source code and other materials that have yet to be exchanged.

Moreover, whether Defendants misappropriated Dumbo's trade secrets also raises substantial questions of fact. The determination of misappropriation often involves a detailed comparison between the plaintiff's trade secrets and the defendant's use of that information. Defendants have not yet produced the necessary discovery, including their source code, which would allow for this comparison.  Without this foundational evidence, any determination on summary judgment would be premature and speculative.  *See InteliClear, LLC*, 978 F.3d at 658 (recognizing the "iterative process" of refining trade secret identification through discovery and reversing premature summary judgment).

Given that no documents or materials have been exchanged, this Court should deny Defendants' motion for summary judgment and allow discovery to proceed without further delay.

12

**CONCLUSION**

For the reasons stated above, Defendants' motion to compel Dumbo to identify its trade secrets with greater particularity, or in the alternative, for partial summary judgment, is both procedurally improper and premature. Dumbo has fully complied with the Court's April 10, 2024, order by providing detailed and specific identification of its trade secrets, sufficient to satisfy the requirement of reasonable particularity. Defendants' continued demands for further specificity are merely a tactic to avoid discovery and delay the proceedings. Furthermore, Defendants' request for partial summary judgment is riddled with factual disputes that can only be resolved through meaningful discovery, particularly the exchange of source code and other critical materials. Accordingly, Dumbo respectfully requests that the Court deny Defendants' motion in its entirety and allow discovery to proceed without further delay.

Dated: Uniondale, New York
        September 27, 2024

**TURMAN LEGAL SOLUTIONS PLLC**

By: *Stephen Turman*
        Stephen E. Turman
        626 RXR Plaza
        Uniondale, NY 11556
        Ph: (516) 266-6101
        Email:  sturman@turmanlegal.com

                    &

        Paul D. Ackerman, Esq.
        **ACKnowledge IP P.C.**
        6800 Jericho Turnpike
        Suite 120W
        Syosset, NY 11791
        Ph: (631) 970-7060, Ext. 1000
        paul@acknowledgeip.com

        *Co-Counsel for the Plaintiff, Dumbo*
        *Moving & Storage, Inc.*

13