

Fred H. Perkins
Partner
(212) 735-8647
fhperkins@morrisoncohen.com

September 9, 2025

**VIA ECF**
Hon. Edgardo Ramos
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

   Re: <u>Dumbo Moving & Storage, Inc. ("Dumbo") v. Piece of Cake Moving & Storage LLC et al, 1:22-cv-05138-ER (the "Action")</u>

Dear Judge Ramos:

  We represent all Defendants in this Action except Volodymyr Plokhykh (the "POC Defendants"), who joins in this letter. In accordance with Local Civil Rule 37.2 and Your Honor's Individual Practices, I write respectfully to request a pre-motion conference for permission to move pursuant to Fed. R. Civ. P. 37 for an order directing that Dumbo be compelled to produce to Defendants' counsel and experts as Attorneys' Eyes Only material – without any conditions limiting access other than provided in the Court's Protective Order (ECF 92) – its operational software previously shared with its expert and that purportedly demonstrates the various functionalities and screen displays depicted in its most recent trade secret identification (ECF 139-2; the "TS Identification") and for related relief.

  Pursuant to the Court's revised Discovery Schedule and Orders of February 4, 2025 and May 6, 2025 (ECF 156 & 167) (the "Scheduling Orders"), the parties were to simultaneously "[e]xchange … source code and operational software" by May 30, 2025 (the "Operational Software"). As detailed in my July 2, 2025 letter to the Court, despite numerous meet and confers, as of July 2nd, Dumbo had yet to actually commit to exchange Operational Software that was "fully functional." (ECF 168 at 2-3). However, immediately before the Court's July 22, 2025 conference regarding the July 2nd letter, Dumbo's counsel notified Defendants that it was ready to provide Operational Software with "basically old stale data from a subsidiary [of Dumbo's] that no longer operates." (See 7/21/25 email chain attached as Ex. A at 2). However, as reported to the Court during our July 22nd conference and explained in detail to Dumbo's counsel, this purportedly Operational Software produced by Dumbo had "significant problems" and was "missing certain functionalities" "claimed [by Dumbo] as trade secrets" in its TS Identification. (See 7/22/25 Transcript at 10-11, 13-14, attached as Ex. B). The Court urged counsel to "continue to talk" to see if Defendants' concerns regarding the missing functionalities and other problems could be resolved and if not, "then we can talk about another motion." (Ex. B at 15).

  Starting on July 22nd, the parties engaged in further efforts to try to resolve the deficiencies in the purportedly Operational Software that Dumbo produced. (See 7/22/25 emails attached as Ex. C). The POC Defendants enumerated various functionalities claimed by Dumbo in its TS Identification that were missing from the software Dumbo produced. (See Ex. C at 4). Dumbo's counsel represented that he would confer with Dumbo and its expert to try to address these deficiencies regarding the produced software. (Ex. C at 1). Defendants discovered that the software Dumbo produced with "stale data" was not only unable to demonstrate the alleged trade secret functionalities claimed by Dumbo, but also was unable to reproduce the salient features of various software screen shots (screen displays) that Dumbo had included in its TS Identification and on which Dumbo's expert had opined in his declaration. (ECF 139-2 at 5, 16, 19, 21, 22, 31, 33-37; ECF 144 ¶ 12-14). All of these deficiencies were brought to the attention of Dumbo's counsel in a letter requesting a meet and confer conference among counsel. (See 8/4/25 letter, attached as Ex. D, an unredacted copy of will be filed under seal as per the Protective Order).



Hon. Edgardo Ramos
Page 2

The 8/4/25 letter explained that most of the claimed functionalities alleged by Dumbo in its TS Identification were absent in the purportedly Operational Software produced by Dumbo. (Ex. D at 7-8). In addition, the 8/4/25 letter showed how Defendants and their skilled software experts were unable to view in the produced software the screen shots that Dumbo previously asserted: (i) "certainly defines and illustrates the relevant trade secrets to the defendants"; and (ii) "serve the intended purpose of providing further detail placing Defendants on notice of the trade secrets Dumbo alleges have been misappropriated by the Defendants." (Ex. D at 1-2 (quoting Dumbo's expert, ECF 144 ¶12-14)).  The 8/4/25 letter included a comparison of the screen displays provided by the produced software with the screen shots Dumbo included in its TS Identification to illustrate these screen display deficiencies.  (Ex. D at 3-7). Significantly, in denying "without prejudice" Defendants' prior motion to compel Dumbo to provide a more detailed description of its alleged trade secrets, the Court observed that Dumbo's TS Identification was amended to include these "***illustrative screenshots*** of key features" of Dumbo's alleged trade secrets and "Dumbo's narrative descriptions of twelve alleged trade secrets, ***combined with illustrative screen shots*** and specific source code references, put Defendants sufficiently 'on notice' of the nature of Dumbo's claims." (ECF 152 at 6, 8, & 12) (emphasis added).

*However, without access to the actual Operational Software that Dumbo provided to its expert and used to create the screen shots included in its TS Identification and without the proper data in the such software, Defendants cannot possibly be "on notice" of Dumbo's asserted trade secret functionalities and screen shots that cannot be generated or reproduced from the deficient software Dumbo produced with "stale data."* (Ex. D at 7-8). Defendants also explained to Dumbo why it cannot generate, as Dumbo suggested, Operational Software from the source code Dumbo produced nor add random data to Dumbo's produced software to cure the foregoing deficiencies.  (*Id*.).

On August 12th, Dumbo's counsel indicated that he was "trying to get the permissions raised" on Dumbo's software "to allow more functionality" and suggested that Defendants' experts review the data available in the produced software from a particular date.  (See 8/12/25 emails attached as Ex. E).  On August 19th, the parties' counsel met and conferred.  During this meet and confer, POC Defendants' counsel explained that use of the data from the suggested date did not alleviate most of the prior issues with the produced software.  As a result, Dumbo's counsel proposed providing Defendants' ***counsel and experts*** with access to the ***actual Operational Software with live data*** that Dumbo had provided to its expert and used to generate the screen shots depicted in Dumbo's TS Identification and cited by the Court in its decision. (ECF 152 at 6, 8 & 12). Following this meet and confer and subsequent emails, Dumbo's counsel represented that Dumbo was willing to provide Defendants' ***counsel and experts*** with certain limited access to its Operational Software with ***live data*** like what was previously provided to Dumbo's expert, ***but only on condition that following a "walk-through" of such software, Defendants' counsel and experts could only access such software no more than twice***. (See emails attached as Ex. F at 10). When Defendants explained that limiting their access to the actual Operational Software to only twice was deficient to allow a proper examination and failed to address their needs for continuing access to prepare for fact and expert depositions, affirmative and rebuttal expert reports, motion practice and any potential trial (Ex. F at 9), Dumbo modified its offer of access to its Operational Software with live data. However, rather than ease the proposed restrictions, Dumbo actually made its proposed access materially more limiting.  Incredibly, after weeks of meet and confer efforts, Dumbo's final position is that ***Defendants' counsel should have no access*** to the actual Operational Software provided to and opined on by its expert and Defendants' experts can have access for only two weeks and thereafter Dumbo is "willing to then discuss additional access as needed."  (Ex. F at 2-4). Providing no access to Defendants' counsel and limited conditional access to their experts is unacceptable for several reasons:



Hon. Edgardo Ramos
Page 3

First, considering that Dumbo's TS Identification included "***illustrative screenshots*** of key features" of Dumbo's alleged trade secrets from its ***actual Operational Software with live data*** that Dumbo's expert opined – and the Court observed – were helpful to put Defendants "'on notice' of the nature of Dumbo's claims," (ECF 152 at 12), principles of equity and fairness dictate that Defendants' ***counsel and experts*** should have full and continuing access to such software to examine and analyze the alleged trade secrets illustrated by the screen displays capable of being generated from such software.

Second, consistent with Fed. R. Civ. P. 26(a)(2)(B), Dumbo is "required to disclose … any information 'considered' by [its] testifying expert. *E.g., Fidelity Nat'l Title Insur. Co. v. Intercounty Nat'l Title Insur. Co*., 412 F.3d 745, 750 (7th Cir. 2005) (Posner, J.). There is no dispute that Dumbo's expert undertook a "review of the Dumbo Software" with live data and opined about screen shots from such software in his declaration. (ECF 144 ¶ 6, 12-14; Ex. F at 3). Defendants' counsel and experts should be given the same access.

Third, since Defendants' counsel and experts can neither save nor modify any of the live data included in Dumbo's actual Operational Software and are subject to a highly restrictive Protective Order that explicitly contemplated the potential production of software with "live data" (ECF 92 at ¶ 8), there is no prejudice to Dumbo to provide to both Defendants' counsel and experts the same unlimited access to Dumbo's Operational Software that Defendants have provided for Defendants' operational software to Dumbo's counsel and expert without any condition or issue other than the already rigorous provisions of the Protective Order. (See Ex. F at 3, 7). Further, having provided unconditional access to Defendants' counsel and experts to Dumbo's allegedly trade secret ***source code*** under the Protective Order – which code Dumbo contends ***embodies*** its trade secrets – Dumbo cannot be prejudiced to provide the same access to its actual Operational Software with live data. Indeed, Dumbo agreed that the prior deficient production of its software was to be treated just like the source code exchanged. (Ex. C at 5). Any suggestion that Defendants' counsel or experts might use Dumbo's live customer data inappropriately in violation of the Protective Order is nothing more than baseless speculation. (Ex. F at 3).

Fourth, until Defendants' counsel and experts actually obtain access to Dumbo's Operational Software with live data, there is no way to determine in advance how many sessions and over what time period would be needed to properly assess Dumbo's claimed trade secret functionalities and screen displays. Naturally, continuing access to such Operational Software would be needed throughout the litigation – during fact discovery and depositions, to prepare affirmative and rebuttal expert reports, during expert discovery, for dispositive motions and, if needed, in preparation for and at trial.

Accordingly, Dumbo should be compelled to provide to Defendants' counsel and experts continuing and the same administrative access to its actual Operational Software with live data that it: (i) provided to its expert, (ii) used to generate the functionalities and screen shots that purportedly define and illustrate its claimed trade secrets, and (iii) supposedly would put Defendants "on notice" of such alleged trade secrets, without any condition other than the Attorneys' Eyes Only restrictions in the Protective Order. Precluding any access by Defendants' counsel and limiting access by their experts as Dumbo proposed would effectively allow Dumbo to claim trade secret misappropriation of the software at issue but nonetheless conceal the very software that it asserts defines and illustrates its trade secrets from meaningful discovery during the Action to defend such claims. Thank you.

          Respectfully submitted,

          *Fred H. Perkins*
          Fred H. Perkins

cc:    All counsel (via ECF)